# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Geisinger Community Medical Center,
1800 Mulberry Street
Scranton, Pennsylvania 18510

                          Plaintiff,

v.

SYLVIA MATHEWS BURWELL, Secretary,
Department of Health and Human Services,
200 Independence Ave, S.W.
Washington, D.C. 20201;

MARILYN TAVENNER, Administrator,
Centers for Medicare and Medicaid Services,
7500 Security Boulevard
Baltimore, Maryland 21244;

and ROBERT G. EATON, Chairman, Medicare
Geographic Classification Review Board,
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244,

                          Defendants.

Civil Action No.

## <u>COMPLAINT</u>

    Plaintiff Geisinger Community Medical Center ("Geisinger"), by and through

its undersigned counsel, brings this action against Sylvia Mathews Burwell, in her

official capacity as Secretary ("Secretary") of the United States Department of

Health and Human Services ("HHS"); Marilyn Tavenner, in her official capacity as Administrator ("Administrator") of the Centers for Medicare and Medicaid Services ("CMS"); and Robert G. Eaton, in his official capacity as Chairman ("Chairman") of the Medicare Geographic Classification Review Board ("MGCRB"), and states as follows:

## I.    INTRODUCTION

1.    This action involves a statute clear on its face and in its intent, and a regulatory scheme designed by the Secretary to deny hospitals certain rights granted by that statute. The statutory provision at issue is Section 401 of the *Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999* ("Section 401"). Pub. L. No. 106-113, H.R. 3194, 106th Cong. § 401 (1st Sess. 1999) (codified in part at 42 U.S.C. § 1395ww(d)(8)(E)). Section 401 created a mechanism by which some hospitals located in urban areas can be treated as being located in a rural area for purposes of Medicare reimbursement.

2.    Section 401 provides that if a hospital qualifies under that section, "the Secretary shall treat the hospital as being located in the rural area … of the State in which the hospital is located." Section 401 requires a qualifying hospital to be treated as located in the rural area of the State for three specific purposes: (1) determining the amount of the hospital's Medicare inpatient reimbursement under subsection (d) of the Medicare Act; (2) determining the amount of the hospital's Medicare

outpatient reimbursement; and (3) determining whether the hospital qualifies for special designation as a Critical Access Hospital.

3. The wage index a hospital receives is a significant component of Medicare inpatient and outpatient reimbursement. The wage index is intended to account for differences in labor costs in different areas of the country. The geographic area in which a hospital is deemed to be located has a significant impact on a hospital's wage index.

4. The MGCRB was created by Congress to provide a mechanism for a hospital to request to be reclassified from the geographic area in which it is physically located to another proximate area for purposes of Medicare reimbursement. 42 U.S.C. § 1395ww(d)(10). The MGCRB is an administrative body within HHS that renders decisions on applications by hospitals to reclassify to different geographic areas for purposes of computing part of their Medicare payments. 42 U.S.C. § 1395ww(d)(10)(A)-(C).

5. In the conference report accompanying Section 401 and the *Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999*, Congress highlighted certain benefits of an urban hospital qualifying under Section 401:

> Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. **Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area**. **The Board shall regard such hospitals**

**as rural and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated**.

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999) (emphasis added).

6.    A designation as being located in either an urban area or a rural area can significantly impact a hospital's Medicare reimbursement. For example, hospitals deemed located in rural areas must satisfy less stringent standards when applying to the MGCRB to reclassify to a different area for purposes of calculating the hospital's Medicare wage index.

7.    Despite the clear language of Section 401 and the clearly expressed intent of Congress, the Secretary has promulgated a regulatory scheme designed to prevent Geisinger from receiving the reimbursement to which it is entitled. The Secretary refuses to allow a Section 401 hospital to be treated by the MGCRB as being located in the rural area of the State. The Secretary also adopted regulations providing that a Section 401 hospital "cannot receive an additional reclassification by the MGCRB based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. § 412.230(a)(5)(iii). Thus, according to the Secretary, a Section 401 hospital cannot be reclassified by the MGCRB to a different geographic area for any year the hospital maintains that Section 401 status.

8.    The practical consequences of the Secretary's regulatory scheme can be substantial. For Geisinger, the failure to be considered a rural hospital and to be

reclassified by the MGCRB to a wage area to which Geisinger believes it is entitled to be reclassified, will cost Geisinger close to two million dollars a year.

9.    Geisinger requests that this Court declare the Secretary's regulatory scheme invalid and permanently enjoin the use by the Secretary, the Administrator of CMS, and the MGCRB of the unlawful regulations in considering MGCRB applications by Geisinger.

## II.    JURISDICTION AND VENUE

10.    The Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1361 (jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff"); and 5 U.S.C. § 701 et seq. (Administrative Procedure Act). This Court may issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## III.    PARTIES

12.    Plaintiff Geisinger, Medicare Provider Number 39-0001, is a not-for-profit, general, acute care hospital located in Scranton, Pennsylvania. Geisinger is a provider of services as defined in the Medicare Act, 42 U.S.C. § 1395x(u), and has entered into an agreement with the Secretary to provide services to Medicare

beneficiaries pursuant to 42 U.S.C. § 1395cc. Geisinger receives reimbursement for services rendered to Medicare beneficiaries.

13.    Defendant Sylvia Mathews Burwell is Secretary of HHS and is sued in her official capacity.

14.    Defendant Marilyn Tavenner is Administrator of CMS, an agency within HHS, and is sued in her official capacity.

15.    Defendant Robert G. Eaton is Chairman of the MGCRB, an agency within HHS, and is sued in his official capacity.

## IV.    STATUTORY AND REGULATORY BACKGROUND

### A.    The Medicare Program

16.    The Medicare Program establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease. Medicare Part A pertains to "inpatient hospital services" and payment for such services. 42 U.S.C. § 1395d(a)(1). Medicare Part B provides payment for physician services and various other outpatient services. 42 U.S.C. § 1395k.

17.    Unless exempt, hospitals participating in Medicare are paid under Medicare's inpatient prospective payment system ("IPPS"), as provided for in 42 U.S.C. § 1395ww(d). Calculating IPPS rates begins with determining the "federal rate," a standard nationwide cost rate (also known as the "standardized amount") based on average operating costs of inpatient hospital services. *See* 42 U.S.C. §

1395ww(d)(2)(A)-(B); *Medicare Program; Prospective Payment for Medicare Inpatient Hosp. Servs.*, 49 FR 234, 251 (Jan. 3, 1984). Because labor costs vary, CMS determines the proportion of the standardized amount attributable to wages and wage-related costs, and multiplies that proportion by a "wage index" that reflects the relation between the local average of hospital wages and the national average. *See* 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E). A third variable reflects the disparate hospital resources required to treat major and minor illnesses. Medicare inpatients are classified into groups based on diagnosis. Each of these "diagnosis-related groups" (DRGs) is assigned a particular "weight" representing the relationship between the cost of treating patients within that group and the average cost of treating all Medicare patients. *See* 42 U.S.C. § 1395ww(d)(4).

18.    A comparable system, known as the Hospital Outpatient Prospective Payment System (OPPS), classifies hospital outpatient services into Ambulatory Payment Classifications (APCs). Payment amounts for each APC are based on CMS's estimates of the costs associated with providing services assigned to an APC. Payments for procedures are adjusted for geographic wage variations: 60% of the APC amount is multiplied by the wage index and added to the remaining 40% of the APC amount.

19.    Thus, the wage index is a significant factor in determining a hospital's reimbursement under both the IPPS system and the OPPS system.

**B.      The Origin and a Partial History of the Wage Index**

20.     In transitioning Medicare to the IPPS system in the early 1980s, Congress recognized that hospitals' labor costs vary widely depending on geographic location and the market in which the hospitals compete for labor. In 42 U.S.C. § 1395ww(d)(3)(E), Congress required an adjustment to the federal reimbursement rate to account for such wage differences:

> [t]he Secretary shall adjust the proportion … of hospitals' costs which are attributable to wages and wage-related costs … for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.

21.     The adjustment is based on the wage index for each geographic area and is recomputed annually to reflect changes in local labor costs compared to the national average. Hospitals in areas that incur labor costs above the national average receive an increased reimbursement rate from the standard federal rate. Hospitals in areas with comparatively lower labor costs receive less than the federal rate. 42 U.S.C. § 1395ww(d)(3)(E).

22.     In 1983, the Secretary established hospital labor markets by grouping hospitals according to their location in Metropolitan Statistical Areas ("MSAs"). The Bureau of the Budget (now Office of Management and Budget, or OMB) developed MSAs based on census data, using counties as building blocks. A metropolitan area is an area (one or more counties) containing a large population nucleus and adjacent

communities with a high degree of integration with that nucleus. In essence, hospitals in the county or counties that make up an MSA are treated as a single hospital labor market for wage index purposes.

23.     Following the 2000 census, OMB (and subsequently CMS) adopted Core Based Statistical Areas (CBSAs) to replace MSAs. This change in definition and terminology does not affect the issues that are the subject of this Complaint.

24.     The Secretary determines a separate wage index for each CBSA in the United States, and one wage index per state for rural areas not located in a CBSA. Whether a hospital is considered located in an urban area or a rural area can significantly impact a hospital's Medicare reimbursement.

25.     The wage index used to adjust Medicare inpatient service payments for an individual hospital is the wage index that the Secretary determines and assigns to the area in which the hospital is physically located.

26.     The Secretary adopted the original MSA classification system even though MSAs were created for statistical purposes only and not for hospital labor market purposes.

27.     Congress recognized that the MSA classifications were not precise enough to adequately measure hospital labor market wage differences and enacted measures to allow hospitals to seek reclassification to other MSAs and receive the other area's wage index adjustment. These corrections have generally been based on

hospitals demonstrating proximity to another wage index area and demonstrating that their costs are comparable to that proximate market. These actions have provided relief from the Secretary's strict reliance on political boundaries (e.g. county lines) to define hospital labor markets.

28.    In 1989, Congress established the MGCRB to determine whether to approve hospitals' requests to receive the wage index of another MSA. 42 U.S.C. § 1395ww(d)(10). Congress directed the Secretary to establish guidelines for the MGCRB to apply in determining whether hospitals would be more appropriately paid using the wage index of another MSA. The resultant regulations are contained in 42 C.F.R. § 412.230–235.

29.    In 1999, Congress enacted Section 401, which created a mechanism by which some hospitals located in urban areas could be treated as being located in a rural area for purposes of certain aspects of Medicare reimbursement. *Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999*, Pub. L. No. 106-113, § 401, 113 Stat. 1501.

30.    The Medicare Payment Advisory Commission ("MedPAC") has determined that more than one-third of all hospitals paid under the IPPS system receive a modified wage index enabled by one or more of the adjustments provided by Congress. *MedPAC: Report to the Congress: Promoting Greater Efficiency in Medicare* (June 2007) at 129, www.medpac.gov/documents/jun07_entire report.pdf.

C.    **Reclassification by the MGCRB**

31.    The MGCRB provides a mechanism for a hospital to be reclassified from the geographic area in which it is located to another proximate area for purposes of Medicare reimbursement. 42 U.S.C. § 1395ww(d)(10). If a hospital's average hourly wage costs are comparable to a geographic area other than, and proximate to, the area in which it is located, and satisfy certain other criteria, the MGCRB must reclassify the hospital to the new geographic area. This can have a substantial impact on a hospital's Medicare reimbursement in a given year.

32.    A hospital applying for geographic reclassification must prove three things: (1) its wages are higher than other hospitals in the area in which the applicant is physically located; (2) its wages are comparable to other hospitals in the area to which the applicant seeks to be reclassified; and (3) it is proximate to the area to which it seeks to be reclassified.

33.    For the first element, the hospital's three-year average hourly wage ("AHW") must be at least 108% of the AHW of the area in which the hospital is physically located if the hospital is located in an urban area or 106% of the AHW if the hospital is located in a rural area. 42 C.F.R. § 412.230(d)(1)(iii)(C).

34.    For the second element, the hospital's three-year AHW must be at least 84% of the AHW applicable to the area to which the hospital is applying if the

hospital is located in an urban area or 82% of the AHW if the hospital is located in a rural area. 42 C.F.R. § 412.230(d)(1)(iv)(E).

35.    For the third element, the hospital must be within 35 miles of the area to which it is applying if the hospital is in a rural area, or within 15 miles of the area to which it is applying if the hospital is in an urban area. 42 C.F.R. § 412.230(b)(1).

36.    Thus, whether a hospital is located in an urban area or a rural area can be very important for the MGCRB application and reclassification process.

37.    The Medicare system also recognizes certain hospitals with "special" status, including rural referral centers (RRCs). An RRC does not have to demonstrate close proximity to the area to which it seeks reclassification. 42 C.F.R. § 412.230(a)(3). Any hospital that was ever an RRC is exempted from the 108% requirement of 42 C.F.R. § 412.230(d)(1)(iii)(C) and 42 C.F.R. § 412.230(d)(3)(i). Also, any hospital that ever was an RRC need only pay 82% of the AHW applicable to the area to which the hospital is applying, just like hospitals located in rural areas of the State. 42 C.F.R. § 412.230(d)(1)(iv)(E) and 42 C.F.R. § 412.230(d)(3)(ii).

38.    Reclassifications by the MGCRB are valid for three years, after which a hospital must reapply to the MGCRB if the hospital wishes to be reclassified to a different CBSA for a subsequent time period.

**D.      There is no Judicial Review of a Decision by the MGCRB.**

39.     MGCRB decisions may be appealed to the Secretary, but the Secretary's decision regarding appeals from the MGCRB "shall be final and shall not be subject to judicial review." 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II). The Secretary has designated the Administrator of CMS to hear any such appeals.

40.     Thus, if a hospital's MGCRB application is denied, there is no appeal to any court from the denial.

**E.      Hospitals Treated as Being Located in a Rural Area Pursuant to Section 401**

41.     As noted above, in 1999 Congress enacted Section 401, which amended section 1886(d)(8) of the Medicare Act and created a mechanism by which some hospitals located in urban areas could be treated as being located in a rural area for purposes of Medicare reimbursement. Section 401 provides in full as follows:

SEC. 401. PERMITTING RECLASSIFICATION OF CERTAIN URBAN HOSPITALS AS RURAL HOSPITALS.

(a)   In General.--Section 1886(d)(8) (42 U.S.C. 1395ww(d)(8)) is amended by adding at the end the following new subparagraph:

``(E)(i) For purposes of this subsection, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.

``(ii) For purposes of clause (i), a subsection (d) hospital described in this clause is a subsection (d) hospital that is located

in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:

>``(I) The hospital is located in a rural census tract of a metropolitan statistical area (as determined under the most recent modification of the Goldsmith Modification, originally published in the Federal Register on February 27, 1992 (57 Fed. Reg. 6725)).

>``(II) The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).

>``(III) The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.

>``(IV) The hospital meets such other criteria as the Secretary may specify.''

(b)  Conforming Changes.--(1) Section 1833(t) (42 U.S.C. 1395l(t)), as amended by sections 201 and 202, is further amended by adding at the end the following new paragraph:

``(13) Miscellaneous provisions.--

>``(A) Application of reclassification of certain hospitals.--If a hospital is being treated as being located in a rural area under section 1886(d)(8)(E), that hospital shall be treated under this subsection as being located in that rural area.''.

(2) Section 1820(c)(2)(B)(i) (42 U.S.C. 1395i-4(c)(2)(B)(i)) is amended, in the matter preceding subclause (I), by inserting ``or is treated as being located in a rural area pursuant to section 1886(d)(8)(E)'' after ``section 1886(d)(2)(D))''.

(c)  Effective Date.--The amendments made by this section shall become effective on January 1, 2000.

42.    Section 401 refers to the definition of "rural area" contained in "paragraph (2)(D)." "Paragraph (2)(D)" was adopted well in advance of Section 401 when Congress adopted the IPPS system. Congress recognized that hospitals in different parts of the country might have different cost structures and required the Secretary to take into account these differences for hospitals in each region, and for urban and rural hospitals within a region. Congress adopted specific statutory definitions of the terms "urban" and "rural":

> The term "urban area" means an area within a Metropolitan Statistical Area (as defined by the Office of Management and Budget) or within such similar area as the Secretary has recognized under subsection (a) by regulation … and the term "rural area" means any area outside such an area or similar area…

42 U.S.C. § 1395ww(d)(2)(D).

43.    Thus, "rural area" is in essence a default definition: if a hospital is not located in an "urban area," the hospital is considered to be located in a "rural area."

44.    Under Section 401, a hospital located in an urban area may qualify to be treated as if it were located in a rural area for purposes of certain aspects of Medicare reimbursement if the hospital meets one of several specified criteria. One such criterion provides that a hospital qualifies for reclassification under Section 401 if it "would qualify as a rural, regional, or national referral center under ... [1886(d)(5)(C)] … if the hospital were located in a rural area." *Id.*

45.    For purposes relevant to the current matter, a hospital qualifies as an RRC if it meets all of the following criteria: (1) the hospital's case-mix index is at least equal to the national or regional average, (2) the hospital has at least 5000 discharges, and (3) at least 50% of the hospital's medical staff is board certified. *Id.*

46.    Section 401 uses mandatory language in directing the Secretary. Thus, Section 401 provides that if a hospital qualifies for redesignation under Section 401, "the Secretary <u>shall</u> treat the hospital as being located in the rural area … of the State in which the hospital is located" (emphasis added). *Id.*

47.    In the conference report accompanying Section 401 and the *Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999*, Congress explained that the benefits of a hospital qualifying under Section 401 would be very broad:

> Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. **Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area**. **The Board shall regard such hospitals as rural** and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999) (emphasis added).

48.    Nonetheless, the Secretary adopted regulations providing that "[a]n urban hospital that has been granted redesignation as rural under §412.103 [the regulation implementing Section 401] cannot receive an additional reclassification by the MGCRB based on this acquired rural status for a year in which such

redesignation is in effect." 42 C.F.R. § 230(a)(5)(iii). Stated differently, under the Secretary's regulations, a Section 401 hospital cannot be reclassified by the MGCRB to a different CBSA for any year the hospital maintains that Section 401 status.

### V.    GEISINGER'S SECTION 401 APPLICATION, REQUEST TO BE DESIGNATED AN RRC, AND MGCRB APPLICATION

49.    Geisinger is geographically located in the Scranton-Wilkes-Barre-Hazelton, PA CBSA (CBSA Number 42540).

50.    By application dated May 28, 2014, and received by CMS on June 11, 2014, Geisinger applied to be designated a Section 401 hospital and thus to be treated as being located in the rural area of Pennsylvania for the purposes set forth in Section 401, including the MGCRB reclassification process.

51.    By letter dated August 12, 2014, CMS notified Geisinger that Geisinger's application to be designated a Section 401 hospital was approved effective June 11, 2014.

52.    By letter dated June 11, 2014, and received by the Medicare Administrative Contractor and CMS on June 13, 2014, Geisinger requested to be designated an RRC.

53.    By letter dated August 20, 2014, Geisinger was notified that Geisinger qualified as and was designated an RRC effective July 1, 2014.

54.     Applications for reclassification for Federal Fiscal Years 2016 through 2018 were required to be received by the MGCRB by close of business September 2, 2014.

55.     Geisinger timely submitted two applications to the MGCRB, as allowed by MGCRB rules: a primary application to be reclassified to the Allentown-Bethlehem-Easton, PA-NJ CBSA (CBSA Number 10900) and a secondary application to be reclassified to East Stroudsburg PA CBSA (CBSA Number 20700). A primary application signals a hospital's preferred CBSA for reclassification and a secondary application is the desired CBSA for reclassification if the primary application is not approved.

56.     Geisinger estimates it will receive approximately $2.6 million a year in additional reimbursement if reclassified by the MGCRB to the primary destination of the Allentown-Bethlehem-Easton, PA-NJ CBSA, but only $1.6 million a year if reclassified to the secondary destination of the East Stroudsburg PA CBSA.

57.     As explained above, the Secretary's regulatory scheme refuses to allow a Section 401 hospital like Geisinger to be reclassified by the MGCRB to a different CBSA for wage index purposes while that Section 401 status is in effect.

58.     Geisinger believes it is entitled under the Medicare Act to maintain its Section 401 status and still be reclassified by the MGCRB to the Allentown-

Bethlehem-Easton, PA-NJ CBSA; the East Stroudsburg PA CBSA; or any other CBSA for which Geisinger satisfies the reclassification requirements.

59.    The hospital satisfies the requirements for reclassification to the Allentown-Bethlehem-Easton, PA-NJ CBSA and the East Stroudsburg, PA CBSA based on the rules applicable to hospitals located in rural areas and the exceptions applicable to RRCs.

60.    Nonetheless, the MGCRB, in compliance with the Secretary's regulatory scheme, will refuse to treat Geisinger as being located in the rural area of the state and will reject Geisinger's primary application to reclassify to the Allentown-Bethlehem-Easton, PA-NJ CBSA.

61.    Similarly, based on the Secretary's regulatory scheme, if Geisinger continued its Section 401 status, the MGCRB would reject Geisinger's application to reclassify to the East Stroudsburg CBSA.

62.    Accordingly, left with no choice but to comply with the Secretary's illegal regulatory scheme or lose millions of dollars of reimbursement, Geisinger submitted a notice of cancellation of its Section 401 status. Based on precedent and the rules governing the MGCRB reclassification process, because Geisinger cancelled its rural status effective October 1, 2015, the MGCRB should approve Geisinger's secondary application to be reclassified by the MGCRB to the East Stroudsburg PA CBSA.

63.    Even with the cancellation of Section 401 status, the MGCRB will not approve Geisinger's application to reclassify to its <u>primary</u> destination of the Allentown-Bethlehem-Easton, PA-NJ CBSA.

64.    Absent this Court's intervention, Geisinger will be forced to attempt to comply with the Secretary's illegal regulatory scheme in order to secure approval of Geisinger's secondary reclassification application to the East Stroudsburg PA CBSA.

65.    Absent this Court's intervention, Geisinger will be wrongly denied reclassification to the Allentown-Bethlehem-Easton, PA-NJ CBSA, which will cause Geisinger to lose millions of dollars of Medicare reimbursement to which the hospital is entitled.

66.    Because there is no judicial review from an adverse decision by the MGCRB, absent this Court's intervention now, Geisinger will have no avenue to have a court review the Secretary's illegal regulatory scheme or overturn the MGCRB's improper denial of the hospital's application.

67.    Geisinger has been and continues to be adversely affected by the Secretary's illegal regulatory scheme.

## VI.    INADEQUACY OF REMEDY AT LAW AND PROPRIETY OF ISSUANCE OF A WRIT OF MANDAMUS

68.    The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or

20

employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

69.    Geisinger will suffer irreparable injury by reason of the Secretary's unlawful regulations and the denial of Geisinger's MGCRB application. Not only will Geisinger be denied the right to reclassify to a CBSA to which Geisinger should be allowed to reclassify for wage index purposes, but it has no other opportunity to challenge the Secretary's unlawful regulations and actions.

70.    Geisinger has no adequate remedy at law. Only the declaratory, injunctive, and mandamus relief that this Court can provide will prevent the harm that Geisinger will imminently suffer.

71.    Geisinger has a clear right to the relief sought. There is no other adequate remedy to correct an otherwise unreviewable decision by the MGCRB and the Secretary. The Secretary has a plainly defined, nondiscretionary duty to provide the relief Geisinger seeks.

## COUNT ONE
### Violation of the Medicare Statute

72.    Geisinger incorporates paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73.    The Secretary's regulatory scheme, which prevents Geisinger from being treated as being located in the rural area of the State for purposes of the

hospital's application to the MGCRB, is contrary to Section 401 and violates the Medicare Act.

## COUNT TWO
### Violation of Administrative Procedure Act (5 U S C § 701 et seq.)

74.    Geisinger incorporates paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.    The Secretary's regulatory scheme, which prevents Geisinger from being treated as being located in the rural area of the State for purposes of the hospital's application to the MGCRB, violates the Administrative Procedures Act (APA) in that, among other things, the Secretary's regulations and actions taken pursuant to those regulations are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; and in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right.

76.    The Secretary's regulatory scheme, requiring the MGCRB to deny Geisinger's application when the hospital has a clear right to approval of its application, constitutes agency action unlawfully withheld pursuant to the APA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1.      Declare that the Secretary's regulatory scheme, which precludes the MGCRB and CMS Administrator from treating Plaintiff as being located in the rural area of the State and an RRC for purposes of Plaintiff's reclassification application before the MGCRB, violates the Medicare Act and the Administrative Procedure Act.

2.      Grant a permanent injunction, an order of mandamus, or both,

   a. prohibiting the Secretary, her successors in office, agents, employees, and all persons acting in concert with the Secretary, including the MGCRB and the CMS Administrator, from applying her regulatory scheme to deny any application by Plaintiff to the MGCRB to reclassify to a different CBSA for wage index purposes;

   b. ordering the Secretary, her successors in office, agents, employees, and all persons acting in concert with the Secretary, including the MGCRB and the CMS Administrator, to consider Plaintiff as being located in the rural area of the State and an RRC, and apply the standards applicable to such hospitals, for purposes of reviewing and approving any applications by Plaintiff to the MGCRB to reclassify to a different CBSA for wage index purposes; and

   c. ordering the Secretary, her successors in office, agents, employees, and all persons acting in concert with the Secretary, including the MGCRB and the CMS Administrator, to consider Plaintiff as being located in the rural area of the State and an RRC, and apply the standards applicable to such hospitals, for purposes of reviewing and approving Plaintiff's current reclassification applications before the MGCRB.

3.    Maintain jurisdiction over this matter to ensure compliance by Defendants' with the terms of this Court's Order.

4.    Require the Secretary to pay all legal fees and costs of suit incurred by Plaintiff.

5.    Provide such other and further relief as the Court deems just and proper.


Dated:  September 10, 2014

Respectfully submitted,


s/ Joseph D. Glazer                                        s/ Mary Kay Brown
Joseph D. Glazer* (NJ No. 042261993)      Mary Kay Brown (PA ID No. 54327)
THE LAW OFFICE OF JOSEPH D. GLAZER, P.C.      Brown Wynn McGarry Nimeroff LLC
116 Village Boulevard, Suite 200                    2001 Market Street, Suite 3420
Princeton, New Jersey 08540                          Philadelphia, PA 19103
Telephone:  (609) 951-2262                           Telephone:  (267) 861-5331
Facsimile:  (609) 951-2263                            Facsimile:  (267) 350-9050
jdg@jdglazerlaw.com                                      mkbrown@bwmnlaw.com


*Counsel for Plaintiff*
*Geisinger Community Medical Center*

---

* Motion for admission *pro hac vice* to be filed.