PJS:DBS:jm

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEISINGER COMMUNITY, | : | |
| MEDICAL CENTER, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO.: 3:14-CV-1763 |
| | : | (MANNION, J.) |
| SYLVIA MATHEWS BURWELL | : | |
| Secretary, Department of | : | |
| Health and Human Services; | : | |
| MARILYN TAVENNER, | : | |
| Administrator, Centers for | : | |
| Medicare and Medicaid Services; | : | |
| ROBERT G. EATON,    Chairman | : | |
| Medicare Geographic | : | |
| Classification Review Board, | : | |
| | : | |
| Defendants | : | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## <u>MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

STATUTORY AND REGULATORY BACKGROUND.........................................2

    A.  The Medicare Program – General Provisions .............................2

    B.  Geographic Reclassification by the MGCRB ............................5

    C.  Section 401 and the Promulgation of
        42 C.F.R. §412.230(a)(5)(iii) ...............................................6

    D.  Special Treatment for Rural Referral Centers ........................10

STATEMENT OF UNDISPUTED MATERICAL FACTS...................................10

ARGUMENT ......................................................................................12

    A.  The Court lacks subject matter jurisdiction to
        hear Geisinger's claims ....................................................12

    B.  Secretary's interpretation of the Medicare statute
        must be upheld.................................................................17

        1.  Standard of Review .....................................................17
        2.  Section 401 is ambiguous..............................................20
        3.  The Secretary reasonably interpreted the statute ...........25

CONCLUSION .....................................................................................29

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allied Local and Regional Mfrs. Caucus v. EPA*,
    215 F.3d 61 (D.C. Cir. 2000)........................................................................20

*American Soc'y of Anesthesiologists v. Shalala*,
    90 F. Supp. 2d 973 (N.D. Ill. 2000)..............................................................15

*American Soc'y of Cataract and Refractive Surgery v. Thompson*,
    279 F.3d 447 (7th Cir. 2002) ........................................................................15

*Athens Cmty. Hosp., Inc. v. Shalala*,
    21 F.3d 1176 (D.C. Cir. 1994)................................................................16, 23

*Bennett v. Spear*,
    520 U.S. 154 (1997)......................................................................................14

*Bowen v. Michigan Acad. of Family Physicians*,
    476 U.S. 667 (1986)......................................................................................15

*Califano v. Sanders*,
    430 U.S. 99 (1977)........................................................................................13

*Chen v. Ashcroft*,
    381 F.3d 221 (3d Cir. 2004) .........................................................................22

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984)......................................................................................18

*Citizens to Pres. Overton Park v. Volpe*,
    401 U.S. 402 (1971)......................................................................................18

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966)......................................................................................18

*Cty. of Los Angeles v. Shalala*,

ii

192 F.3d 1005 (D.C. Cir. 1999).......................................................................3

*FCC v. Nat'l Citizens Comm. For Broad.*,
436 U.S. 775 (1978)...............................................................................18

*Heckler v. Ringer*,
466 U.S. 602 (1984)...............................................................................13

*Lawrence & Mem. Hosp. v. Sebelius*,
986 F. Supp. 2d 124 (D. Conn. 2013) ...........................................................2

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).........................................................................14, 16

*Methodist Hosp. of Sacramento v. Shalala*,
38 F.3d 1225 (D.C. Cir. 1994)..................................................................22

*Motor Vehicle Mfr's Ass'n v. State Farm Mut. Auto Ins. Co.*,
463 U.S. 29 (1983)...........................................................................18, 20

*National Home Equity Mortg. Ass'n. v. Office of Thrift Supervision*,
271 F. Supp. 2d 264 (D.D.C. 2003)..............................................................20

*Natural Resources Defense Council, Inc. v. Muszynski*,
268 F.3d 91 (2d Cir. 2001) .......................................................................19

*Palisades General Hosp. v. Leavitt*,
426 F.3d 400 (D.C. Cir. 2005)..................................................................16

*Parkview Medical Assoc. v. Shalala*,
158 F.3d 146 (D.C. Cir. 1998)..................................................................16

*Perry v. Dowling*,
95 F.3d 231 (2d Cir. 1996) .......................................................................19

*Robert Wood Johnson Univ. Hosp. v. Thompson*,
297 F.3d 273 (3d Cir. 2002) .....................................................................16

*Schweiker v. Grey Panthers*,
453 U.S. 34 (1981)...............................................................................19

*Shalala v. Illinois Council on Long Term Care, Inc.*,
    529 U.S. 1 (2000).................................................................................13

*Skagit Cnty. Public Hospital District No. 2 v.  Shalala*,
    80 F.3d 379 (9th Cir. 1996) .............................................................15

*Thomas Jefferson Univ. v. Shalala*,
    512 U.S. 504 (1994).............................................................................19

*U.S. v. Geiser*,
    527 F.3d 288 (3rd Cir., 2008),
    *cert. denied*, *Geiser v. U.S.*, 555 U.S. 1102 (2009) ......................................22

*Universal Health Servs. v. Sullivan*,
    770 F. Supp. 704 (D.D.C. 1991),
    *aff'd mem.*, 978 F.2d 745 (D.C. Cir. 1992) ..................................................16

*Zuni Pub. Sch. Dist. No. 89 v. Dep't. Ed.*,
    550 U.S. 81 (2007)..............................................................................22

## FEDERAL STATUTES

5 U.S.C. § 701 ....................................................................................................13

5 U.S.C. § 706(2)(C),(A),(E) .............................................................................18

5 U.S.C. § 706(2)(E) ..........................................................................................18

28 U.S.C. §§ 1331 ..............................................................................................13

70 Fed. Reg. 47278, 47444, 47487 (Aug. 12, 2005) ................................................9

42 C.F.R. § 412.103 .....................................................................................12, 13

42 C.F.R. § 412.104(g)(ii) ..................................................................................11

42 C.F.R. § 412.105(f)(1)(iv)(A) .........................................................................27

42 C.F.R. § 412.230 ...........................................................................................24

42 C.F.R. § 412.230(a)(1)(ii) ...................................................................6

42 C.F.R. § 412.230(a)(5)(iii) ................................................................1, 6

42 C.F.R. § 412.230(a)(5)(iv) ...................................................................8

42 C.F.R. § 412.230 ..................................................................................6

42 C.F.R. § 412.256 ................................................................................14

42 C.F.R. § 412.258 ................................................................................17

42 C.F.R. § 412.278 ..................................................................................6

42 C.F.R. § 412.96 ..................................................................................10

42 U.S.C. § 1395 .......................................................................................2

42 U.S.C. § 1395ww(d) .............................................................................3

42 U.S.C. § 1395ww(d)(1) .........................................................................3

42 U.S.C. § 1395ww(d)(10) ...............................................................1, 5, 20

42 U.S.C. § 1395ww(d)(10)(C)(iii)(II) ..............................................6, 14, 17

42 U.S.C. § 1395ww(d)(10)(D)(i) ...................................................6, 23, 24

42 U.S.C. § 1395ww(d)(2)(A),(B) ..............................................................3

42 U.S.C. § 1395ww(d)(2)(C) .....................................................................4

42 U.S.C. § 1395ww(d)(2)(D) .....................................................................4

42 U.S.C. § 1395ww(d)(2)(H),(3)(E) ...........................................................4

42 U.S.C. § 1395ww(d)(5)(B)(v) ..........................................................10, 27

42 U.S.C. § 1395ww(d)(5)(C)(i) ...............................................................10

42 U.S.C. § 1395ww(d)(6) ............................................................5

42 U.S.C. § 1395ww(d)(8) ............................................................6

42 U.S.C. § 1395ww(d)(8)(B) ........................................................5

42 U.S.C. § 1395ww(d)(8)(E) .................................................1, 7, 21

42 U.S.C. § 1395ww(d)(8) (Section 401) .........................................7

42 U.S.C. §§ 1395x(u) .................................................................3

42 U.S.C §§13951(t) ...................................................................23

42 U.S.C. §§ 405(a), 1395hh(a) ....................................................3

42 U.S.C. §§ 405(h), 1395ii .........................................................13

44 Fed. Reg. 11612, 11613 (Mar. 1, 1979) ......................................4

65 Fed. Reg. 26282 (May 2000) ....................................................7

55 Fed. Reg. 36754, 36755 (Sept. 6, 1990) ....................................5

55 Fed. Reg. 36754, 36760 (Sept. 6, 1990) ....................................6

65 Fed. Reg. 47054 (August 1, 2000) ............................................8

65 Fed. Reg. at 26308 ..........................................................8, 21, 25

65 Fed. Reg. at 47088 .................................................................9

65 Fed. Reg. at 47089 ............................................................10, 27

65 Fed. Reg. at 47108 .................................................................9

78 Fed. Reg. 50496, 50586 (Aug. 19, 2013) ...................................4

**Introduction**

Geisinger, a Medicare-certified hospital located in Scranton, Pennsylvania, brings this action to challenge a regulation promulgated under the Medicare program by the Secretary of Health and Human Services.

In its complaint, Geisinger alleges that the regulation, 42 C.F.R. § 412.230(a)(5)(iii), would unlawfully prevent the Medicare Geographic Classification Review Board (MGCRB or the Board) from considering its application to be reclassified to the Allentown-Bethlehem-Easton, PA-NJ urban area for purposes of payment under Medicare's inpatient hospital prospective payment system (PPS) (Doc. 1, at 3-4). The regulation challenged by Geisinger precludes a hospital that has been redesignated as rural under 42 U.S.C. § 1395ww(d)(8)(E), which was enacted by section 401 of Public Law 106-113 (Section 401), from "receiv[ing] an additional reclassification by the MGCRB based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. § 412.230(a)(5)(iii). Geisinger contends that it is entitled under Section 401 to participate in the MGCRB reclassification process, which is governed by a different statutory provision, 42 U.S.C. § 1395ww(d)(10), on the same basis as a geographically rural hospital and, therefore, that the Secretary's regulation is invalid.

Geisinger's claim fails for two reasons.  First, the Court lacks subject matter jurisdiction over this case because Geisinger has not received a final decision of the Secretary on its reclassification requests, and if it had received such a decision that decision would be unreviewable under the plain terms of the Medicare statue.  Second, turning to the merits, while Geisinger's position might find some support in legislative history, ultimately the statutory language  at issue here is ambiguous – it does not address the issue of interactions between rural redesignations under § 1395ww(d)(8)(E) and the § 1395ww(d)(10) reclassification process.  Moreover, the Secretary's regulation is based on a reasonable interpretation of the statute, and is not arbitrary or capricious.  Accordingly, this Court should follow the only other federal court to so far consider this issue, *see Lawrence & Mem. Hosp. v. Sebelius*, 986 F. Supp.2d 124 (D. Conn. 2013) (denying motion for preliminary injunction)[1] and enter judgment in the Secretary's favor.

## Statutory and Regulatory Background

### A.  The Medicare Program – General Provisions

The Medicare statute (title XVIII of the Social Security Act; 42 U.S.C. § 1395 *et seq.*) establishes a national program of health insurance for the aged and disabled.  Part A of Medicare (42 U.S.C. § 1395 *et seq.*), which is the part at issue

---

[1] We understand the court in *Lawrence & Mem. Hosp.* is currently considering these questions again at the summary judgment stage of the proceedings.

in this case, pays for inpatient hospital and related post-hospital benefits on behalf of eligible individuals.  Part A services are furnished by "providers of services" (e.g., hospitals and skilled nursing facilities) that have entered into "provider agreements" with the Secretary. 42 U.S.C. §§ 1395x(u) and 1395cc.

Congress has charged the Secretary with the responsibility of administering Medicare, and has authorized her to issue regulations and interpretive rules implementing the statute.  42 U.S.C. §§ 405(a), 1395hh(a), and 1395ii.  The Secretary has delegated these responsibilities to the Administrator of the Centers for Medicare & Medicaid Services (CMS) (formerly known as the Health Care Financing Administration (HCFA)).

Since 1983, Medicare has reimbursed hospitals for the operating costs of inpatient hospital services through the PPS. 42 U.S.C. § 1395ww(d).  Generally speaking, a hospital's PPS payment is based on prospectively-determined rates, rather than on the actual costs incurred by the hospital. 42 U.S.C. § 1395ww(d)(1)-(4); *see also Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1008 (D.C. Cir. 1999).

The Medicare statute contains a complex formula for calculating PPS rates. The rates are based on the average Medicare allowable costs per discharge during a base year, as adjusted for inflation, for each hospital participating in the program. 42 U.S.C. § 1395ww(d)(2)(A),(B).  Adjusted  averages for each hospital are then "standardized" to remove the effects of factors including indirect medical

3

education costs, wage variations, and "case mix" (that is, the relative complexity and costliness of each hospital's cases). 42 U.S.C. § 1395ww(d)(2)(C). PPS payment rates are computed by adjusting the standardized amount by a variety of factors, including most relevant to this case a "wage index," which is a multiplier, expressed in the form of a decimal, to account for area wage differences. 42 U.S.C. § 1395ww(d)(2)(H),(3)(E). Each value listed in the PPS wage index represents a comparison of the average hospital wage in an area with the national average hospital wage. 44 Fed. Reg. 11612, 11613 (Mar. 1, 1979). An area with a wage index above 1 (such as 1.05) has labor costs greater than the national average; an area with a wage index below 1 (such as .995) has labor costs below the national average.

For wage-index purposes, Medicare defines hospital labor markets as "urban" based on the Core-Based Statistical Areas promulgated by the Office of Management and Budget (OMB). *See* 42 U.S.C. § 1395ww(d)(2)(D); 78 Fed. Reg. 50496, 50586 (Aug. 19, 2013)**.** A rural area is any area outside of an urban area. *Id.* The wage index has a direct impact on the amount of reimbursement a hospital receives: the higher the wage index for the area in which the hospital is located, the more the hospital will be reimbursed per discharge.

Each year, the Secretary publishes a proposed rule on or about May 1 and a final rule on or about August 1 that announces the PPS payment rates, including

the area wage indexes, and any changes in the PPS rules for the upcoming federal fiscal year, which begins on October 1. 42 U.S.C. § 1395ww(d)(6).

## B. Geographic Reclassification by the MGCRB

From the inception of the PPS, some hospitals argued that they were inappropriately classified to an area that did not reflect the higher wage costs they incurred.  These hospitals asserted that they were competing for employees and resources with hospitals in higher-cost areas and therefore had to incur higher costs than other hospitals in their area.  In addressing this problem, Congress in 1987 and 1988 revised the Medicare statute to provide that, if certain conditions are met, the Secretary will treat a hospital located in a rural county adjacent to an urban area as if it is located in a nearby urban area.  42 U.S.C. § 1395ww(d)(8)(B).  Congress intended for this provision to apply to a limited number of hospitals that arguably merited payment at the urban rate because of their close proximity to urban areas and because of local commuting patterns.  *See* 55 *Fed. Reg.* 36754, 36755 (Sept. 6, 1990).  Many hospitals sought reclassification under this provision, but their requests were denied because the hospitals did not meet the applicable requirements, and these hospitals petitioned Congress.  Congress responded in 1989 by enacting 42 U.S.C. § 1395ww(d)(10), which established the MGCRB. P.L. 101-239, § 6003(h)(1) (MGCRB Statute).  Congress provided at § 1395ww(d)(10)(C)(i) that the MGCRB could consider the application for

5

geographic reclassification of any hospital paid under PPS, without limiting this provision to hospitals located in rural areas (as had been the case under 42 U.S.C. § 1395ww(d)(8)).  *See* 55 *Fed. Reg.* 36754, 36760 (Sept. 6, 1990) ("[t]he MGCRB has the authority to make decisions with respect to reclassification from a rural area to an urban area or another rural area and reclassification from an urban area to another urban area.").  Congress directed the Secretary to "publish guidelines to be utilized by the [MGCRB] in rendering decisions on applications [for geographic reclassification]."  42 U.S.C. § 1395ww(d)(10)(D)(i).  CMS has promulgated regulations setting forth the criteria and conditions governing MGCRB reclassification decisions under the statute. 42 C.F.R. § 412.230, *et seq.*[2]  Under those regulations, an individual hospital may be reclassified from an urban area to another urban area, from a rural area to another rural area, or from a rural area to an urban area, for purposes of using the other area's wage index value, if applicable criteria are met.  42 C.F.R. § 412.230(a)(1)(ii).

### C.  Section 401 and the Promulgation of 42 C.F.R. § 412.230(a)(5)(iii)

On November 29, 1999, Congress acted to create yet another

---

[2] A hospital dissatisfied with the MGCRB's decision on an application for geographic reclassification can seek review of the decision from the Administrator of CMS.  42 C.F.R. § 412.278.  The Administrator's decision is final and not subject to further administrative or judicial review.  42 U.S.C. § 1395ww(d)(10)(C)(iii)(II).

reclassification mechanism by enacting Section 401 of the Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999, Public Law 106-113, which added a new subparagraph (E) to 42 U.S.C. § 1395ww(d)(8) (Section 401). Section 401 requires the Secretary, independently of the MGCRB reclassification process, to reclassify an urban hospital as rural, if the hospital applies for such reclassification, and if it meets certain population or geographic criteria. The provision states that, "[f]or purposes of [§ 1395ww(d)], . . . the Secretary shall treat [such a] hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located."    42 U.S.C. § 1395ww(d)(8)(E). A House Conference Report included the following statement on the legislation:

> A hospital in an urban area may apply to the Secretary to be treated as if the hospital were located in a rural area of the State in which the hospital is located. Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. Additionally, qualifying hospitals shall be eligible to apply to the [MGCRB] for geographic reclassification to another area. The Board shall regard such hospitals as rural and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, 512 (1999).

In the FY 2001 PPS proposed rule, CMS's predecessor, HCFA, considered the effect of Section 401 on the MGCRB classification process. 65 Fed. Reg.

26282 (May 2000).   HCFA noted that Section 401 "does not address the issue of

interactions between changes in classification under section [1395ww(d)(8)(E)]

and the MGCRB reclassification process under section [1395ww(d)(10)]." 65

Fed. Reg. at 26308.  The agency also noted that –

> section [1395ww(d)(8)(E)] might create an opportunity for
> some urban hospitals to take advantage of the MGCRB
> process by first seeking to be reclassified as rural under section
> [1395ww(d)(8)(E)] (and receiving the benefits afforded to
> rural hospitals) and in turn seek reclassification through the
> MGCRB back to the urban area for purposes of their
> standardized amount and wage index (and thus also receive the
> higher payments that might result from being treated as being
> located in an urban area).

Id.  HCFA noted that, given the "potential for inappropriately inconsistent

treatment of the same hospital", it was considering the imposition of a limit on

the ability of an urban hospital that has been redesignated as rural to participate in

the MGCRB process.  Id. The agency invited "specific comments on how such a

limitation, if any, should be imposed."  Id.  In the final rule for the FY 2001 PPS

rates, 65 Fed. Reg. 47054 (August 1, 2000), HCFA addressed the interaction

between Section 401 and the MGCRB reclassification process by promulgating

42 C.F.R. § 412.230(a)(5)(iv) (currently designated as § 412.230(a)(5)(iii)),

which stated that -

> [a]n urban hospital that has been granted redesignation as rural
> under § 412.103 cannot receive an additional reclassification by
> the MGCRB based on this acquired rural status as long as such
> redesignation is in effect.

65 Fed. Reg. at 47108.[3]  According to HCFA, this partition between Section 401

and the MGCRB reclassification mechanisms furthered Congress' intent that a

hospital designated as rural under Section 401 be treated as rural for PPS purposes,

that is, with respect to both the hospital wage index and the standardized amount,

while avoiding the problem of a hospital "seek[ing] to be treated as being located

in a rural area for some purposes and as being located in an urban area for other

purposes."  65 Fed. Reg. at 47088.  The rule also addressed the potential for

inappropriate and unintended consequences of a hospital carrying both urban and

rural designations for differing purposes.  *Id.*  The agency noted in particular the

incongruity of allowing a hospital to be reclassified to a different urban area for

wage-index purposes, while simultaneously receiving the benefits designed for

rural hospitals, such as rural hospitals' ability to claim reimbursement for 30

percent more interns and residents than urban hospitals under Medicare's rules

---

[3] In 2005, CMS clarified the regulation by providing that the preclusion on
MGCRB reclassification applies only "for a year in which" the hospital's acquired
rural status is in effect, thus ensuring that a hospital that cancels its acquired rural
status effective at the end of the fiscal year can apply for reclassification by the
MGCRB for the next fiscal year.  *See* 70 Fed. Reg. 47278, 47444, 47487 (Aug. 12,
2005).

9

governing reimbursement to teaching hospitals for the costs of their medical education programs.  *Id.,* citing 42 U.S.C. § 1395ww(d)(5)(B)(v).

### D.  Special Treatment for Rural Referral Centers

The PPS statute provides special treatment for various subtypes of hospitals, such as those deemed rural referral centers (RRCs).  A hospital in a rural area that has operating characteristics similar to a typical urban hospital can obtain the additional designation of RRC.  42 U.S.C. § 1395ww(d)(5)(C)(i).  The criteria for this designation are set forth at 42 C.F.R. § 412.96.  At the present time, the only benefit to a hospital of being an RRC (or of formerly being an RRC) is that it will be exempt from certain reclassification criteria in the MGCRB process regarding the proximity of the hospital to the area to which it seeks to be reclassified.  These criteria are known as the "proximity requirements."  *See* 42 C.F.R. §§ 412.96(d) and 412.230(a)(3),(d)(3); 65 Fed. Reg. at 47089.

### Statement of Undisputed Material Facts

(1)  Geisinger, Geisinger Community Medical Center, is a hospital in Scranton, Pennsylvania, and has entered into a Provider Agreement with the Secretary of the Department of Health & Human Services.  (CMS Ex. 1).[4]  The

---

[4]Since 1987 when the hospital entered into the current Provider Agreement, the hospital has changed its name to the current name, Geisinger Community Medical Center.

hospital is geographically located in the Scranton—Wilkes-Barre, PA urban area. (CMS Ex. 2).

(2)  In a letter dated May 28, 2014, Geisinger requested to be resdesignated from an urban to a rural hospital pursuant to section 401.  (CMS Ex. 3).

(3)  On June 11, 2014, Geisinger requested RRC status.  (CMS Ex. 4).

(4)  On August 12, 2014, CMS granted Geisinger's request to be redesignated a rural hospital pursuant to section 401, effective June 11, 2014 (CMS Ex. 2).  Shortly thereafter, on August 20, 2014, CMS granted Geisinger's request for RRC status effective July 1, 2014.  (CMS Ex. 5).[5]

(5)  On August 26, 2014, fourteen days after CMS redesignated Geisinger a rural hospital, Geisinger asked CMS to cancel its rural status, effective October 1, 2015.[6]  (CMS Ex. 6). CMS approved the hospital's request on September 15, 2014. (CMS Ex. 7).

(6)  On August 28, 2014, Geisinger submitted two applications to the MGCRB:  a primary application to be reclassified for wage-index purposes to the Allentown-Bethlehem-Easton, PA-NJ urban area, effective October 1, 2016 (CMS

---

[5]It is not surprising that Geisinger was able to demonstrate, as required to obtain RRC status, that it had operating characteristics similar to a typical urban hospital because it is in fact an urban hospital.

[6]Medicare regulations require hospitals who reclassify as rural to retain that reclassification for at least one year.  42 C.F.R. § 412.104(g)(ii).

Ex. 8); and a secondary application to be reclassified to the East Stroudsburg PA urban area, also effective October 1, 2016. (CMS Ex. 9).

(7)  In its primary application, Geisinger identified itself as a rural hospital. (CMS Ex. 8 at 4, response to Question No. 6).

(8)  In its secondary application, Geisinger identified itself as an urban hospital.  (CMS Ex. 9 at 4, response to Question No. 6).

<u>Argument</u>

**A.  The Court lacks subject matter jurisdiction to hear Plaintiff's claims**

Before reaching the merits of the case, the Court must determine whether it has jurisdiction to review this matter. The Court lacks subject matter jurisdiction over this case because Geisinger has not received a final decision of the Secretary on its reclassification requests, and if it had received such a decision that decision would be unreviewable under the plain terms of the Medicare statue.

In support of its challenge to the validity of 42 C.F.R. § 412.103, Geisinger claims that the MGCRB "*will* refuse to treat Geisinger as being located in the rural area of the state and *will* reject Geisinger's primary application to reclassify to the Allentown-Bethlehem-Easton, PA-NJ CBSA" (emphasis supplied) on account of that regulation.  However, the Board has not made such a determination.  In August 2014, Geisinger filed primary and secondary applications for reclassification with MGCRB but the Board has not yet ruled on these applications.

12

Thus, Geisinger's challenge is premature. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (observing that the Medicare statute "demands the 'channeling' of virtually all legal attacks through the agency. . . .").

Geisinger's jurisdictional allegations in its complaint are clearly deficient. It alleges subject matter jurisdiction based on 28 U.S.C §§ 1331 (federal question) and 1363 (mandamus), and under 5 U.S.C. § 701 et seq. (the Administrative Procedure Act (APA)). Compl. ¶ 10. All three of these allegations fail. First, federal question jurisdiction in Medicare cases is expressly foreclosed by the statue at 42 U.S.C. §§ 405(h), 1395ii. Second, the Supreme Court has similarly barred resort to mandamus jurisdiction in Medicare cases where, as here, available administrative remedies have not been exhausted. *See Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984). And third, the Court long ago instructed that the APA does not grant subject matter jurisdiction to the federal courts. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Moreover, Geisinger's applications may be denied by the MGCRB for one or more other reasons unrelated to 42 C.F.R. § 412.103. For instance, applications can be denied if they are incomplete or not sufficiently supported by required documentation. *See* 42 C.F.R. § 412.256; *see also* CMS Ex. 8 at 9, Ex. 9 at 9. And the Board's decision is reviewable by the Administrator of CMS under 42 C.F.R. §412.278. Thus it is presumptive to say that the Board would not approve

13

the reclassification because of the challenged regulation or that, if it did, review by

the Administrator would produce the same result.  Accordingly, without a final

agency decision on the matter, the Court lacks subject matter jurisdiction over

Geisinger's claims, either because Geisinger has suffered no harm by reason of the

challenged regulation and thus lacks standing, or because of the lack of final

agency action that the Court could review.  *See*, *e.g.*, *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992) (standing under Article III of the United

States Constitution requires an "injury in fact"); *Bennett v. Spear*, 520 U.S. 154,

177-78 (1997) (APA review requires agency action that both marks the

consummation of the agency's decision making process and determines legal rights

or obligations.).

This Court's review of Geisinger's claim is also expressly foreclosed by 42

U.S.C. § 1395ww(d)(10)(C)(iii)(II).  That statute provides that the decision of the

MGCRB may be appealed to the Secretary and that the "decision of the Secretary

shall be final and shall not be subject to judicial review."   For the Court to

intervene now would just eviscerate the congressionally mandated preclusion of

review.

While there is a strong presumption in favor of judicial review of an

administrative action, *Bowen v. Michigan Acad. of Family Physicians,* 476 U.S.

667, 670 (1986), the presumption may be overcome by "specific language or

specific legislative history that is a reliable indicator of congressional intent or a specific congressional intent to preclude judicial review that is fairly discernible in the detail of the legislative scheme." *Id.* at 673 (citations and internal quotations omitted).  Geisinger cannot evade the congressional decision not to allow judicial review of reclassification decisions by arguing that it is instead seeking review of one or more of the substantive standards that the Secretary applies in making such decisions.  Any decision can be broken down into various premises and reasons, and if a bar on judicial review of a given decision could be avoided merely by claiming to seek review only of one of those reasons or premises, the bar would be wholly ineffectual.  Thus, where the decision itself is unreviewable, it follows that a suit repackaged as one merely seeking review of a reason or premise or one of the other "strands" of the decision is likewise unreviewable.  *American Soc'y of Anesthesiologists v. Shalala*, 90 F. Supp. 2d 973, 976 (N.D. Ill. 2000)  (making this point with respect to a similar budget-neutral, no-review provision of the Medicare Act); *see American Soc'y of Cataract and Refractive Surgery v. Thompson*, 279 F.3d 447 (7th Cir. 2002).  *Skagit Cnty. Public Hospital District No. 2 v. Shalala*, 80 F.3d 379 (9th Cir. 1996) correctly so holds with respect to the very statutory preclusion that is at issue here.  80 F.3d at 385-86.[7]  After all, if the point of

---

[7] A line of cases in the D.C. Circuit, on the other hand, got this point wrong. *Parkview Medical Assoc. v. Shalala*, 158 F.3d 146 (D.C. Cir. 1998); *Athens Cmty*.

reviewing the standards the Secretary uses in making reclassification decisions is

to change or order a particular MGCRB decision, then the bar on judicial review of

those decisions is subverted; if, on the other hand, Geisinger claims that review of

the mere standards for reclassification does not affect the actual, unreviewable

reclassification decisions themselves, where is the Article III case or controversy?[8]

*See Lujan, supra*.

In sum, whether due to application of principles of exhaustion of remedies,

standing, lack of final agency action, or some combination of all of these,

Geisinger's claims here are not justiciable.   Before Geisinger can seek judicial

review of a MGCRB determination, it must exhaust its administrative remedies by

_____

*Hosp. v. Shalala*, 21 F.3d 1176 (D.C. Cir. 1994); *Universal Health Servs. v. Sullivan*, 770 F. Supp. 704, 710-12 (D.D.C. 1991), *aff'd mem*., 978 F.2d 745 (D.C. Cir. 1992).  A more recent case distinguished this line, and, following Skagit County, held that judicial review was precluded even though a hospital claimed it was seeking review of decision other than geographic reclassification, since, in practice, the hospital's challenge was nothing "more than an attempt to undo an individual denial of reclassification."  *Palisades General Hosp. v. Leavitt*, 426 F.3d 400, 405 (D.C. Cir. 2005).  Here too, Geisinger's quarrel is that it cannot be reclassified to the Allentown-Bethlehem-Easton urban area.  That claim is unreviewable, and it does not help to restate it as a challenge to the reasons why Geisinger cannot be reclassified.

[8] A similar point was noted, though not reached, in *Robert Wood Johnson Univ. Hosp. v. Thompson*, 297 F.3d 273 (3d Cir. 2002).  That court held (correctly) that there was no judicial review of a reclassification and (more debatably in our view) that a related agency interpretation of the statute was reviewable.  After sustaining the agency's interpretation on the merits, the court, citing *Skagit Cnty.* with apparent approval, noted that "[e]ven were we to find for the Hospital, it is not clear that we could grant the requested relief."  279 F.3d at 286 n.6.

appealing to the CMS Administrator in accordance with 42 U.S.C.

§ 1395ww(d)(10)(c)(iii)(II) and 42 C.F.R. § 412.258.  Because, as Geisinger

readily admits, the courts are precluded from reviewing a final MGCRB

determination, Geisinger prematurely crafted this challenge in an attempt to get

around the preclusion.   But attempting to avoid preclusion cannot be a defense to

failing to exhaust administrative remedies.   Geisinger is confronted with the

insurmountable problem of the manner in which Congress drafted the statutory

provisions regarding review of Medicare claims generally and MCRCB decisions

in particular.  If, as we submit, Geisinger's claims are thwarted by those

provisions, Geisinger's quarrel is with Congress, not the Secretary.

### B.  Secretary's interpretation of the Medicare statute must be upheld

### 1.  <u>Standard of Review</u>

Judicial review of Medicare provider reimbursement disputes is governed by

the standards in the APA.  In general, the APA permits agency action to be set

aside if it was "in excess of statutory jurisdiction, authority or limitations, or short

of statutory right," "arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law," or "unsupported by substantial evidence." *See* 5 U.S.C.

§ 706(2)(C), (A), (E).

Generally, agency action may be invalidated as arbitrary or capricious under

the APA only if it is "not rational and based on consideration of the relevant

factors." *FCC v. Nat'l Citizens Comm. For Broad.*, 436 U.S. 775, 803 (1978); see

also *Motor Vehicle Mfr's Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43

(1983). Similarly, agency action may not be invalidated as "unsupported by

substantial evidence," 5 U.S.C. § 706(2)(E), if it is supported by such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966) (internal quotation

omitted). Furthermore, in determining whether agency action was arbitrary or

capricious or unsupported by substantial evidence, the court is not empowered to

substitute its judgment for that of the agency. *Citizens to Pres. Overton Park v.

Volpe*, 401 U.S. 402, 416 (1971).

Geisinger's challenge to the Secretary's regulation should be evaluated

under the principles of deference described in *Chevron U.S.A., Inc. v. Natural

Resources Defense Council, Inc.*, 467 U.S. 837 (1984). In analyzing an agency's

interpretation of a statute under *Chevron*, the court first employs ordinary tools of

statutory construction to determine whether "Congress has directly spoken to the

precise question at issue." *Id.* at 842. If Congress has directly spoken to the

precise question at issue, the court must give effect to Congress' unequivocal

intent.  *Id.* at 842-843.  However, if the statute is "silent or ambiguous with respect

to the specific issue, the question for the court is whether the agency's

[interpretation] is based on a permissible construction of the statute."  *Id.* at 843.

In applying the second prong of the *Chevron* test, a court must give

"considerable weight" to the agency's interpretation of the statute. *Id.* at 844.

Deference to the agency's construction is especially appropriate in cases, such as

the present action, which raise technical issues under a complex regulatory scheme.

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *See also Perry v.

Dowling*, 95 F.3d 231, 236 (2d Cir. 1996) ("[s]uch deference is particularly

warranted with respect to interpretations of the Social Security Act, because of the

Act's intricate nature").  Because the Medicare statute "is among the most intricate

ever drafted by Congress," Congress has "conferred on the Secretary exceptionally

broad authority to prescribe standards" for applying sections of the Act.  *Schweiker

v. Grey Panthers*, 453 U.S. 34, 43 (1981).

Under step two of *Chevron*, the Secretary need only show that her

interpretation of the statute is reasonable to prevail. *See Natural Resources Defense

Council, Inc. v. Muszynski,* 268 F.3d 91, 98 (2d Cir. 2001). Under this deferential

standard of review, a court does not determine "whether [the agency's] approach

was 'ideal,' nor whether it was the 'most appropriate,' but only whether it was

19

reasonable." *Allied Local and Regional Mfrs. Caucus v. EPA*, 215 F.3d 61, 73 (D.C. Cir. 2000) (citations omitted).  If the Secretary's "reasons and policy choices … conform to 'certain minimal standards of rationality' … the rule is reasonable and must be upheld, even though the Court itself might have made different choices."  *National Home Equity Mortg. Ass'n. v. Office of Thrift Supervision*, 271 F. Supp.2d 264, 269 (D.D.C. 2003).  So long as there is a "'rational connection between the facts found and the choice made,'" *Motor Vehicle Mfrs. Ass'n. of U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), a court is required to defer to the agency's judgment.

   2.  **Section 401 is ambiguous**

   The question to be decided under step one of the *Chevron* analysis is whether Geisinger's statutory construction is compelled by the plain language of the Medicare Act.  Geisinger interprets Section 401 as requiring the Secretary to permit urban hospitals with acquired rural status under that provision to participate in the MGCRB process, which is governed by a different statutory provision, 42 U.S.C. § 1395ww(d)(10), on the same basis as geographically rural hospitals. We submit that, while such an interpretation may be permissible under the language of Section 401, it is certainly not compelled by the plain language of the statute.

   We start by noting that Section 401 is utterly silent on the interaction between that statute and the separate statute that provides for MGCRB

reclassification.  The statute merely requires the Secretary, for the purposes of the

PPS, to "treat" a hospital with acquired rural status "as being located in the rural

area . . . of the State in which the hospital is located."  42 U.S.C.

§ 1395ww(d)(8)(E).  There is nothing in this bare statutory command that

unambiguously requires the Secretary to allow a hospital with acquired rural status

under Section 401 to apply for reclassification to an urban area under the MGCRB

process.  *See* 65 *Fed. Reg.* at 26308 (noting that the statute does not "address the

issue of interactions between changes in classification under section

[1395ww(d)(8)(E)] and the MGCRB reclassification process under section

[1395ww(d)(10)]").  The statute does not address any subsequent reclassifications

by a Section 401 hospital under the MGCRB statute and implementing regulations.

Despite the absence of any language in Section 401 discussing the

intersection between that statute and the MGCRB statute, Geisinger asserts that

Congress has directly spoken to the precise question at issue as evidenced by a

House Conference Report accompanying Section 401.  The conference report

included the following statement on the legislation:

> A hospital in an urban area may apply to the Secretary to be
> treated as if the hospital were located in a rural area of the State
> in which the hospital is located.  Hospitals qualifying under this
> section shall be eligible to qualify for all categories and
> designations available to rural hospitals, including sole
> community, Medicare dependent, critical access, and referral
> centers.  Additionally, qualifying hospitals shall be eligible to
> apply to the [MGCRB] for geographic reclassification to

> another area. The Board shall regard such hospitals as rural and
> as entitled to the exceptions extended to referral centers and
> sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, 512 (1999).

However, it is not appropriate for the Court to consider legislative history at

*Chevron* step one.  *See U.S. v. Geiser*, 527 F.3d 288, 292 (3rd Cir., 2008), *cert.*

*denied*, *Geiser v. U.S.*, 555 U.S. 1102 (2009).  In *Geiser*, the U.S. Court of Appeals

for the Third Circuit held that:

> [t]he current state of Supreme Court and Third Circuit
> jurisprudence demonstrate at legislative history should not be
> considered at *Chevron* step one. At step one, a court "must ask
> ... whether Congress has directly spoken to the precise question
> at issue." *Chen,* 381 F.3d  at 224 (internal quotation marks and
> citations omitted). We determine whether Congress has
> "unambiguously expressed [its] intent," *id.,* by looking at the
> "plain" and "literal" language of the statute, *Zuni Pub. Sch.*
> *Dist.,* 127 S.Ct. at 1543.

*Id.* at 294 (citing  *Chen v. Ashcroft*, 381 F.3d 221 (3d Cir. 2004) and  *Zuni*

*Pub. Sch. Dist. No. 89 v. Dep't. Ed.*,550 U.S. 81 (2007)).

Looking at the "plain" and "literal" language of Section 401, Congress has

not unambiguously expressed how Section 401 hospitals should be treated for

purposes of requests for MGCRB reclassification.  *Cf.  Methodist Hosp. of*

*Sacramento v. Shalala*, 38 F.3d 1225, 1230 (D.C. Cir. 1994) (Medicare statute is

silent regarding how the Secretary should construct the wage index and how often

she must revise it.).  Consequently, it would be inappropriate to utilize the single

22

statement from the House Conference Report to expand the scope of Section 401 in a way that limits the Secretary's discretion under § 1395ww(d)(10).

Geisinger assumes that Congress must have intended that once a hospital is designated as rural under Section 401, the provider would be able to reclassify to an urban area in the same manner as a geographically rural hospital.  However, such a construction is actually *contrary* to a literal interpretation of the statutory language – i.e., the Secretary would not be "treating" a hospital as "rural" if she simultaneously reclassified the provider to an "urban" area for wage-index purposes.

Moreover, while Section 401(b) made "conforming changes" to two other sections of the Medicare Act, 42 U.S.C. §§ 1395l(t) and 1395i-4(c)(2)(B)(i), it made no changes to the MGCRB provisions of the statute.  As the *Lawrence* court noted, Section 401 did not amend or even refer to § 1395ww(d)(10), nor did it address the standards by which the MGCRB would evaluate a redesignated hospital's reclassification request.  *Lawrence*, 986 F. Supp.2d at 135.  In other words, in enacting the new reclassification mechanism, Congress made no effort to circumscribe or cabin the Secretary's existing authority under the former process to "publish guidelines to be utilized by the [MGCRB] in rendering decisions on applications [for reclassification]."  42 U.S.C. § 1395ww(d)(10)(D)(i).  *See also Athens Cmty. Hosp., Inc. v. Shalala,* 21 F.3d 1176, 1179 (D.C. Cir. 1994)

23

("Congress delegated to the Secretary the authority to determine the degree to which the [MGCRB's] discretion should be limited").

These omissions strongly militate against Geisinger's step-one *Chevron* claim - if Congress had intended to limit the Secretary's discretion under the MGCRB process by requiring the MGCRB to accept and process reclassification applications from hospitals with acquired rural status under Section 401, it more than likely would have made an explicit reference of that intent in § 1395ww(d)(10).

Moreover, again, in the MGCRB statute, Congress gave the Secretary broad discretion to develop the guidelines for considering MGCRB applications. See 42 U.S.C. § 1395ww(d)(10)(D)(i) ("The Secretary shall publish guidelines to be utilized by the Board in rendering decisions on applications submitted under this paragraph . . . "). The Secretary exercised that discretion in enacting 42 C.F.R. § 412.230, and Section 401 does not purport to cabin that discretion. In light of Section 401's silence regarding the geographic reclassification process, and in light of the delegation of authority to the Secretary to develop the standards by which hospitals are evaluated before the MGCRB, Geisinger cannot make the demonstrate that 42 C.F.R. § 412.230 violates the plain meaning of Section 401.

Geisinger understandably wants to have its cake and eat it too – it wants to retain its status as a *rural* referral center (which it obtained as a result of its

redesignation under Section 401), while it simultaneously utilizes that status to be reclassified under § 1395ww(d)(10) to an *urban* area with higher wages than the urban area in which it is geographically located.  Contrary to Geisinger's contention, however, the plain language of the statute does not establish that it is entitled to obtain the benefits of both reclassification mechanisms simultaneously, and thereby be considered simultaneously rural for some purposes (i.e., status as a RRF) and urban for other purposes (i.e. receipt of a higher wage index).  The Court should therefore reject Geisinger's *Chevron* step-one challenge to the Secretary's regulation.

###   3.  The Secretary reasonably interpreted the statute

As the Secretary has demonstrated, the Medicare statute does not address the precise issue in this case – it does not unambiguously provide that hospitals with acquired rural status under Section 401 may participate in the MGCRB reclassification process.  Hence, the question to be decided in this case is whether the Secretary's construction is permissible under step two of *Chevron.* We submit it is both permissible and eminently reasonable.

In the rulemaking proceedings that implemented Section 401, the Secretary considered an approach that would have allowed an urban hospital with acquired rural status under that provision "to apply and be reclassified by the MGCRB like any other rural hospital".  65 *Fed. Reg.* at 26308 (preamble to proposed rule).

25

However, the Secretary expressed concern that this approach would create "the

potential for inappropriately inconsistent treatment of the same hospital." *Id.* at

47088 (preamble to final rule). The agency noted that the approach would allow

an urban hospital to manipulate the system "by first seeking to be reclassified as

rural under section [1395ww(d)(8)(E)] (and receiving the benefits afforded to rural

hospitals) and in turn seek reclassification through the MGCRB back to the urban

area . . . (and thus also receive the higher payments that might result from being

treated as being located in an urban area)." *Id.* at 26308.

The Secretary noted that the proposal would produce results that are

"illogical" and "anomalous."

> We believe that it would be illogical to permit a hospital that
> applied to be reclassified from urban to rural under section
> [1395ww(d)(8)(E)] because it was disadvantaged as an urban
> hospital to then utilize a process that was established to enable
> hospitals significantly disadvantaged by their rural or small
> urban location to reclassify to another urban location. If an
> urban hospital applies under section [1395ww(d)(8)(E)] in
> order to be treated as being located in a rural area, then it would
> be anomalous at best for the urban hospital to subsequently
> claim that it is significantly disadvantaged by the rural status for
> which it applied and should be reclassified to an urban area.

*Id.* at 47088. The agency also expressed concern for the unintended

consequences of such a policy, and noted for instance that the policy would

allow an urban hospital with acquired rural status to receive the 30% increase in

the cap on the Indirect Medical Education resident count afforded to rural

26

hospitals, while also receiving the higher wage-index payments available to hospitals in urban areas. *Id., citing* 42 U.S.C. § 1395(d)(5)(B)(v); s*ee also* 42 C.F.R. § 412.105(f)(1)(iv)(A).  Thus, as the *Lawrence* court stated, Geisinger's argument ignores the Secretary's comments explaining the decision to disqualify redesignated rural hospitals from the MGCRB process.  986 F. Supp.2d at 137.

Finally, the agency considered alternative approaches suggested by a commenter – one of which would have allowed a hospital with acquired rural status to reclassify back to a different area than the one in which it is geographically located, but not to the same area.  However, the agency rejected these alternatives, reasoning that, while the approaches "would limit to some degree the possible inappropriate incentives for hospitals to become rural under section [1395ww(d)(8)(E)], we are concerned that they would still allow these hospitals to receive inappropriate payments, albeit on a more limited basis."  65 Fed. Reg. at 47089.

In short, the agency approached the issue in a deliberate and considered way, and ultimately arrived at a reasonable conclusion.  The Secretary reasonably decided to resolve the ambiguity in the statute regarding the interaction between Section 401 and the MGCRB reclassification process by promulgating a rule that eliminates the potential for inconsistent reclassifications of the same hospital for

the same period, as well as the potential for unintended consequences. Finally, the agency considered but reasonably rejected alternative approaches to the rule it ultimately adopted. Thus, as the *Lawrence* court held, "[s]uch an interpretation is hardly arbitrary or capricious." 986 F. Supp.2d at 138.

While Geisinger contends that a hospital with acquired rural status under Section 401 is entitled to unfettered access to the MGCRB reclassification process, there is nothing in the language of that provision to suggest that the Secretary is required to accommodate the inconsistencies, complications, and unintended consequences that would be created by such an approach. The restriction chosen by the Secretary to address the issue is a reasonable one, even though there might also exist other reasonable policy choices. The Geisinger here is located in an urban area. It took advantage of Section 401 to be redesignated as rural and become an RRC. It is certainly rational for the Secretary to say that for that same hospital to then use its RRC status to obtain the payment advantages available to hospitals in yet another urban is simply a bridge too far. All the various reclassification mechanisms allow hospitals located in one area to receive some aspect of Medicare payment as if they are located in another area, but it is another matter entirely to say that a hospital can be considered *both* urban and rural at the same time for different payment purposes. That is what Geisinger wants but as we have shown the statute does not require it, and it was reasonable for the Secretary

28

to engage in rulemaking to preclude that result.  The Secretary's challenged

regulation should be upheld under step two of *Chevron*.

## **CONCLUSION**

For the reasons stated in this memorandum, the Secretary's Motion for

Summary Judgment should be granted.

Dated:  October 24, 2014                    Respectfully submitted,

PETER J. SMITH
United States Attorney

s/ D. Brian Simpson
D. BRIAN SIMPSON
Assistant U.S. Attorney
OH 71431
228 Walnut Street
Harrisburg, PA 17108
Telephone: 717-221-4482
Facsimile: 717-221-2246
D.Brian.Simpson@usdoj.gov

DAVID O. AULT
MD. BAR # 200612120032
U.S. Department of Health and
Human Services
Office of the General Counsel/CMS
Division
330 Independence Ave., S.W.,
Rm. 5309
Washington, DC 20201
Telephone: (202) 260-1874
Facsimile: (202) 401-1405
David.Ault@hhs.gov

<u>Of Counsel</u>:

WILLIAM B. SCHULTZ
General Counsel

JANICE L. HOFFMAN
Associate General Counsel

SUSAN MAXSON LYONS
Deputy Associate General Counsel
for Litigation

U.S. Department of Health and Human Services
Office of the General Counsel
Centers for the Medicare & Medicaid Services Division

## <u>CERTIFICATE OF SERVICE BY MAIL</u>

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania, and is a person of such age and discretion as to be competent to serve papers.

That on October 24, 2014, she served copies of the attached:

### DEFENDANTS' MEMORANDUM IN SUPPORT OF<br>MOTION FOR SUMMARY JUDGMENT

By email to:

Joseph D. Glazer, Esquire
Mary Kay Brown, Esquire


<u>/s Jodi Matuszewski</u>
Jodi Matuszewski
Legal Assistant

31