# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Geisinger Community Medical Center,<br><br>     Plaintiff,<br><br>v.<br><br>SYLVIA MATHEWS BURWELL, Secretary,<br>Department of Health and Human Services;<br>MARILYN TAVENNER, Administrator,<br>Centers for Medicare and Medicaid Services;<br>and ROBERT G. EATON, Chairman, Medicare<br>Geographic Classification Review Board,<br><br>     Defendants. | Civil Action No. 3:14-cv-01763-MEM |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Joseph D. Glazer (NJ No. 042261993)  Mary Kay Brown (PA ID No. 54327)
THE LAW OFFICE OF JOSEPH D. GLAZER, P.C. Brown Wynn McGarry Nimeroff LLC
116 Village Boulevard, Suite 200   2001 Market Street, Suite 3420
Princeton, New Jersey 08540    Philadelphia, PA 19103
Telephone:  (609) 951-2262    Telephone:  (267) 861-5331
Facsimile:  (609) 951-2263    Facsimile:  (267) 350-9050
jdg@jdglazerlaw.com     mkbrown@bwmnlaw.com


*Counsel for Plaintiff*
*Geisinger Community Medical Center*

## GLOSSARY OF ABBREVIATIONS AND ACRONYMS

| | |
|---|---|
| AHW | Average Hourly Wage |
| APCs | Ambulatory Payment Classifications |
| CBSAs | Core Based Statistical Areas |
| CMS | Centers for Medicare and Medicaid Services |
| CMS Administrator | Administrator of the Centers for Medicare and Medicaid Services |
| DRGs | Diagnosis-Related Groups |
| HHS | United States Department of Health & Human Services |
| IPPS | Inpatient Prospective Payment System |
| MedPAC | Medicare Payment Advisory Commission |
| MGCRB | Medicare Geographic Classification Review Board |
| MSAs | Metropolitan Statistical Areas |
| OMB | Office of Management and Budget |
| OPPS | Outpatient Prospective Payment System |
| RRC | Rural Referral Center |
| Secretary | Secretary, United States Department of Health & Human Services |
| Section 401 | Section 401 of the *Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999* ("Section 401"). Pub. L. No. 106-113, § 401, 113 Stat. 1501 (codified at 42 U.S.C. § 1395ww(d)(8)(E)) |

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

FACTUAL BACKGROUND ....................................................................4

   I.   Statutory and Regulatory Background .............................................4

       A.   The Medicare Program ...........................................................4

       B.   The Origin and a Partial History of the Wage Index ..............5

       C.   Reclassification by the MGCRB...............................................7

       D.   Hospitals Redesignating Pursuant to Section 401 ..................8

   II.  Geisinger's Section 401 Status and MGCRB Applications ..........11

ARGUMENT .........................................................................................14

   I.   Geisinger is Entitled to Summary Judgment Because the Secretary's
       Regulatory Scheme is Illegal Pursuant to the Two-Step
       *Chevron* Analysis...................................................................14

       A.   The Secretary's Regulatory Scheme is Illegal under
           Step 1 of *Chevron* ................................................................15

           1.   The Secretary's Regulatory Scheme is Illegal Based on the
              Unambiguous Language of Section 401..........................16

           2.   The Secretary's Regulatory Scheme is Illegal Based on the
              Context of Section 401 ...................................................21

           3.   The Legislative History of Section 401 shows that the Secretary's
              Regulatory Scheme is Illegal..........................................24

       B.   The Secretary's Regulatory Scheme is Illegal under
           Step 2 of *Chevron* ................................................................27

CONCLUSION ......................................................................................30

# TABLE OF AUTHORITIES

**CASES**

*Barnhart v. Sigmon Coal Co., Inc.*,
    534 U.S. 438, 122 S. Ct. 941 , 151 L. Ed. 2d 908 (2002) ....................................17

*Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*,
    464 U.S. 89, 104 S. Ct. 439, 78 L. Ed. 2d 195 (1983) ..........................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986) ......................................14

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ............................ passim

*Corley v. United States*,
    556 U.S. 303, 314, 129 S. Ct. 1559, 1566, 173 L. Ed. 2d 443 (2009) ................18

*Envtl. Def. v. Duke Energy Corp.*,
    549 U.S. 561, 127 S. Ct. 1423, 167 L. Ed. 2d 295 (2007) ...................................28

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120, 120 S. Ct. 1291 , 146 L. Ed. 2d 121 (2000) ..................................22

*Gen. Dynamics Land Sys., Inc. v. Cline*,
    540 U.S. 581, 124 S. Ct. 1236, 157 L. Ed. 2d 1094 (2004) .................................15

*GenOn REMA, LLC v. EPA*,
    722 F.3d 513, 522 (3d Cir. 2013) ........................................................................28

*Hewitt v. Helms*,
    459 U.S. 460, 103 S. Ct. 864, 74 L .Ed. 2d 675 (1983) .......................................19

*In re Phila Newspapers, LLC*,
    599 F.3d 298 (3d Cir. 2010) ................................................................................15

*Lawson v. FMR LLC*,
    134 S. Ct. 1158, 188 L. Ed. 2d 158 (2014) ............................................. 18, 24-25

*Trinity Indus., Inc. v. Chi. Bridge & Iron Co.,*
   735 F.3d 131 (3d Cir. 2013) ...................................................................14

*United States v. Geiser*,
   527 F.3d 288 (3d Cir. 2008) .................................................................24

*United States v. McGee*,
   763 F.3d 304, 315 (3d Cir. 2014) ........................................................28

*United States v. Monsanto*,
   491 U.S. 600, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989) ...................19

## FEDERAL STATUTES

42 U.S.C. 1395i-4(c)(2)(B)(i) .....................................................................9

42 U.S.C. § 1395*l*(t) .............................................................................5, 9

42 U.S.C. § 1395ww(d) ..............................................................................4

42 U.S.C. § 1395ww(d)(2)(A)-(B) ..............................................................4

42 U.S.C. § 1395ww(d)(2)(D) .............................................................. 19, 29

42 U.S.C. § 1395ww(d)(2)(H) ..................................................................4, 6

42 U.S.C. § 1395ww(d)(3)(E) ............................................................. 4, 5, 6

42 U.S.C. § 1395ww(d)(4)..........................................................................4

42 U.S.C. § 1395ww(d)(8)...........................................................................8

42 U.S.C. § 1395ww(d)(8)(E).............................................................. passim

42 U.S.C. § 1395ww(d)(10)...................................................................7, 18

42 U.S.C. § 1395ww(d)(10)(C)(iii)(II) ......................................................8

*Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999*,
    Pub. L. No. 106-113, § 401, 113 Stat. 1501 ("Section 401")....................... passim

**FEDERAL REGULATIONS**

42 C.F.R. § 412.103 ...............................................................................10

42 C.F.R. § 412.230 ...............................................................................26

42 C.F.R. § 412.230(a)(3) .........................................................................8

42 C.F.R. § 412.230(a)(5)(iii) ...............................................................3, 11

42 C.F.R. § 412.230(b)(1)......................................................................7, 12

42 C.F.R. § 412.230(d)(1)(iii)(C) ..........................................................7, 8

42 C.F.R. § 412.230(d)(1)(iv)(E).........................................................7, 12

42 C.F.R. § 412.274 ..................................................................................7

**FEDERAL REGISTER**

*Medicare Program; Changes to the Hosp. Inpatient Prospective Payment Sys. &*
    *Fiscal Year 2005 Rates*, 69 FR 48,916 (Aug. 11, 2004).........................................6

*Medicare Program; Changes to the Hosp. Inpatient Prospective Payment Sys. &*
    *Fiscal Year 2006 Rates*, 70 FR 47,278 (Aug. 12, 2005)......................................26

*Medicare Program; Prospective Payments for Medicare Inpatient Hosp. Servs.*,
    48 FR 39,752 (Sept. 1, 1983) ...............................................................6

**OTHER SOURCES**

Fed.R.Civ.P. 56(c)...................................................................................14

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999)................................. passim

*In the Case of Moses Taylor Hosp.*, Decision of the Admin. (Apr. 27, 2013)
   2013 WL 2470295 .......................................................................................... 26-27

*In the Case of Regional Hosp. of Scranton*, Decision of the Admin. (Apr. 27, 2013)
   2013 WL 2470296 .......................................................................................... 26-27

*MedPAC: Report to the Congress: Promoting Greater Efficiency in Medicare*
(June 2007),
http://www.medpac.gov/documents/Jun07_EntireReport.pdf .................................7

## **INTRODUCTION**

This action involves a statute clear on its face and in its intent, and a regulatory scheme designed by the Secretary ("Secretary") of the United States Department of Health and Human Services ("HHS") to deny hospitals rights granted by that statute. Plaintiff Geisinger Community Medical Center ("Geisinger") moves for summary judgment to prevent the Secretary from imposing that illegal regulatory scheme and each year denying Geisinger millions of dollars in reimbursement to which Geisinger is rightfully entitled.

The Medicare Geographic Classification Review Board ("MGCRB") is a body within HHS that rules on hospital applications to reclassify to a different geographic area for purposes of computing certain Medicare payments. Geisinger seeks to reclassify to the Allentown-Bethlehem-Easton, PA-NJ Core Based Statistical Area (the "Allentown CBSA"), which would increase Geisinger's reimbursement by approximately $2.6 million a year. Geisinger filed a secondary application, in case its primary application is denied, to reclassify to the East Stroudsburg, PA CBSA (the "East Stroudsburg CBSA"), which would increase Geisinger's reimbursement by approximately $1.3 million a year.

The wage index a hospital receives and the process by which a hospital can apply to the MGCRB for reclassification to a different wage area are important components of Medicare reimbursement. A hospital's location in either an urban

1

area or a rural area can also significantly impact a hospital's Medicare reimbursement. For example, hospitals located in rural areas must satisfy different standards than hospitals located in urban areas when applying to the MGCRB.

Section 401 of the *Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999*[1] ("Section 401") created a mechanism by which some hospitals located in urban areas can be treated as being located in a rural area for certain aspects of Medicare reimbursement. If a hospital qualifies, "the Secretary shall treat the hospital as being located in the rural area … of the State in which the hospital is located" for three specific purposes: (1) determining Medicare inpatient reimbursement under subsection (d); (2) determining Medicare outpatient reimbursement; and (3) determining whether a hospital qualifies for special designation as a Critical Access Hospital.

Geisinger has been designated a Section 401 hospital.

In the conference report accompanying Section 401, Congress highlighted certain benefits of an urban hospital qualifying under Section 401:

> Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. **Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area. The Board shall regard such**

---

[1] Pub. L. No. 106-113, § 401, 113 Stat. 1501 (codified in part at 42 U.S.C. § 1395ww(d)(8)(E)).

> **hospitals as rural** and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999) (emphasis added).

Despite the clear language of Section 401 and the clearly expressed intent of Congress, the Secretary refuses to allow the MGCRB to treat a Section 401 hospital like hospitals located in rural areas. The Secretary's regulations provide that a Section 401 hospital "cannot receive an additional reclassification by the MGCRB based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. § 412.230(a)(5)(iii). Thus, according to the Secretary, the MGCRB cannot reclassify a Section 401 hospital to a different geographic area for any year the hospital has Section 401 status. A Section 401 hospital must cancel that status to have its application considered by the MGCRB.

Geisinger seeks to be reclassified by the MGCRB effective October 1, 2015. If the MGCRB were to apply to Geisinger the criteria that govern hospitals located in rural areas, Geisinger would be reclassified. By refusing to require the MGCRB to treat Geisinger as being located in a rural area, the Secretary violates Section 401 and will deny Geisinger millions of dollars a year in Medicare reimbursement to which the hospital is entitled.

## FACTUAL BACKGROUND

### I.    Statutory and Regulatory Background

### A.    The Medicare Program

Hospitals participating in Medicare generally are paid under an inpatient prospective payment system ("IPPS"). 42 U.S.C. § 1395ww(d). Calculating IPPS rates begins with a standard nationwide rate based on average operating costs of inpatient hospital services. 42 U.S.C. § 1395ww(d)(2)(A)-(B). Because labor costs vary, CMS determines the proportion of the standardized amount attributable to wages and wage-related costs, and multiplies that proportion by a "wage index" that reflects the relation between the local average of hospital wages and the national average. *See* 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E). A third variable reflects the disparate hospital resources required to treat major and minor illnesses. Medicare inpatients are classified into groups based on diagnosis, and each of these "diagnosis-related groups" (DRGs) is assigned a particular "weight" representing the relationship between the cost of treating patients within that group and the average cost of treating all Medicare patients. *See* 42 U.S.C. § 1395ww(d)(4).

A comparable system, commonly known as the Hospital Outpatient Prospective Payment System (OPPS), exists for Medicare outpatient payments to hospitals. Payment amounts for each outpatient Ambulatory Payment Classification (APC) are based on CMS's estimates of the costs associated with providing services

assigned to an APC. Payments for procedures are adjusted for geographic wage variations: 60% of the APC amount is multiplied by the wage index and added to the remaining 40% of the APC amount. *See* 42 U.S.C. § 1395*l*(t).

Thus, the wage index is a significant factor in determining a hospital's reimbursement under both the IPPS system and the OPPS system.

### B.    The Origin and a Partial History of the Wage Index

Congress recognized that hospitals' labor costs vary widely depending on geographic location and the market in which the hospitals compete for labor. In 42 U.S.C. § 1395ww(d)(3)(E), Congress required an adjustment to the federal reimbursement rate to account for such wage differences:

> [t]he Secretary shall adjust the proportion … of hospitals' costs which are attributable to wages and wage-related costs … for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.

The wage index adjustment is recomputed annually to reflect changes in local labor costs compared to the national average. Hospitals in areas with labor costs above the national average receive a higher reimbursement rate, while hospitals in areas with lower labor costs receive a lower rate. 42 U.S.C. § 1395ww(d)(3)(E).

In 1983, the Secretary established hospital labor markets by grouping hospitals according to Metropolitan Statistical Areas ("MSAs"). Hospitals in the county or counties that make up an MSA are grouped together and treated as a single

labor market for wage index purposes. *See Medicare Program; Prospective Payments for Medicare Inpatient Hosp. Servs.*, 48 FR 39,752, 39766 (Sept. 1, 1983). Following the 2000 census, CMS adopted Core Based Statistical Areas (CBSAs) to replace MSAs. *See Medicare Program; Changes to the Hosp. Inpatient Prospective Payment Sys. & Fiscal Year 2005 Rates*, 69 FR 48,916, 49049 (Aug. 11, 2004).

The Secretary determines a separate wage index for each CBSA, and one wage index per state for rural areas. A hospital's wage index is the wage index the Secretary assigns to the area where the hospital is physically located. *See* 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E). Whether a hospital is considered located in an urban area or rural area can significantly impact a hospital's Medicare reimbursement.

Congress recognized that CBSA classifications do not adequately measure hospital labor market differences and enacted measures to eliminate some inequities by allowing hospitals to reclassify to other CBSAs and receive the other area's wage index. These corrections have generally been based on hospitals demonstrating proximity to another wage index area and demonstrating that their costs are comparable to that proximate market. These actions have provided relief from the Secretary's strict reliance on political boundaries (county lines) to define hospital labor markets. More than one-third of all hospitals paid under the IPPS system receive a modified wage index enabled by one or more of the adjustments provided

by Congress. *MedPAC: Report to the Congress: Promoting Greater Efficiency in Medicare* (June 2007) at 129, www.medpac.gov/documents/jun07_entire report.pdf.

## C.    Reclassification by the MGCRB

In 1989, Congress established the MGCRB to decide hospitals' requests to receive another area's wage index. 42 U.S.C. § 1395ww(d)(10). Reclassifications are valid for three years. 42 C.F.R. § 412.274.

A hospital generally must show three things to reclassify: (1) its wages are higher than other hospitals in the area the applicant is located; (2) its wages are comparable to hospitals in the area to which the applicant seeks to reclassify; and (3) it is proximate to that area. For the first element, the hospital's three-year average hourly wage ("AHW") must be at least 108% of the AHW of the area in which the hospital is located if the hospital is located in an urban area or 106% if the hospital is located in a rural area. 42 C.F.R. § 412.230(d)(1)(iii)(C). For the second element, the hospital's three-year AHW must be at least 84% of the AHW of the area to which the hospital is applying if the hospital is located in an urban area or 82% if the hospital is located in a rural area. 42 C.F.R. § 412.230(d)(1)(iv)(E). For the third element, the hospital must be within 35 miles of the area to which it is applying if the hospital is located in a rural area, or within 15 miles if the hospital is located in an urban area. 42 C.F.R. § 412.230(b)(1).

Thus, whether a hospital is located in an urban area or a rural area can be very important for the MGCRB application and reclassification process.

Medicare recognizes hospitals with "special" status, including rural referral centers (RRCs).  An RRC need not demonstrate close proximity to the area to which it seeks reclassification. 42 C.F.R. § 412.230(a)(3). Also, any hospital that was ever an RRC is exempt from the 108% requirement of 42 C.F.R. § 412.230(d)(1)(iii)(C). Thus, RRCs are exempt from two of the three tests for MGCRB reclassification.

MGCRB decisions may be appealed to the Secretary, who has designated the CMS Administrator to hear appeals. The Secretary's decision "shall be final and shall not be subject to judicial review." 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II). Thus, if a hospital's MGCRB application is denied, there is no appeal to any court.

### D.    Hospitals Redesignating Pursuant to Section 401

Congress enacted Section 401 in 1999, creating a mechanism by which some hospitals located in urban areas could be treated as being located in a rural area for purposes of Medicare reimbursement. Section 401 provides in full as follows:

SEC. 401. PERMITTING RECLASSIFICATION OF CERTAIN URBAN HOSPITALS AS RURAL HOSPITALS.

(a)   In General.--Section 1886(d)(8) (42 U.S.C. 1395ww(d)(8)) is amended by adding at the end the following new subparagraph:

``(E)(i) For purposes of this subsection, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the

Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.

``(ii) For purposes of clause (i), a subsection (d) hospital  described in this clause is a subsection (d) hospital that is located in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:

``(I) The hospital is located in a rural census tract of a metropolitan statistical area (as determined under the most recent modification of the Goldsmith Modification, originally published in the Federal Register on February 27, 1992 (57 Fed. Reg. 6725)).

``(II) The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).

``(III) The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.

``(IV) The hospital meets such other criteria as the Secretary may specify."

(b)  Conforming Changes.--(1) Section 1833(t) (42 U.S.C. 1395l(t)), as amended by sections 201 and 202, is further amended by adding at the end the following new paragraph:

``(13) Miscellaneous provisions.--

``(A) Application of reclassification of certain hospitals.--If a hospital is being treated as being located in a rural area under section 1886(d)(8)(E), that hospital shall be treated under this subsection as being located in that rural area."

(2) Section 1820(c)(2)(B)(i) (42 U.S.C. 1395i-4(c)(2)(B)(i)) is amended, in the matter preceding subclause (I), by inserting ``or is treated as being located in a rural area pursuant to section 1886(d)(8)(E)" after ``section 1886(d)(2)(D))".

9

(c)  Effective Date.--The amendments made by this section shall become effective on January 1, 2000.

Thus, a hospital located in an urban area qualifies to be treated as if it were located in a rural area if the hospital meets one of several criteria, including if the hospital would qualify as an RRC. Geisinger meets the criteria to qualify as an RRC.

Section 401 uses mandatory language. If a hospital qualifies under Section 401, "the Secretary shall treat the hospital as being located in the rural area … of the State in which the hospital is located" for the three areas set forth in Section 401:

1.  Inpatient reimbursement under subsection (d). *See* Section 401(a);

2.  Outpatient reimbursement. *See* Section 401(b)(1), and

3.  Determining Critical Access Hospital eligibility. *See* Section 401(b)(2).

In the conference report accompanying Section 401, Congress explained that the benefits of a hospital qualifying under Section 401 would be very broad:

> Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. **Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area**. **The Board shall regard such hospitals as rural** and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999) (emphasis added).

Nonetheless, the Secretary adopted regulations providing that "[a]n urban hospital that has been granted redesignation as rural under §412.103 [the regulation

implementing Section 401] cannot receive an additional reclassification by the MGCRB based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. § 412.230(a)(5)(iii). Stated differently, under the Secretary's regulations a Section 401 hospital cannot be reclassified by the MGCRB to a different CBSA for any year the hospital maintains Section 401 status.

## II.    Geisinger's Section 401 Status and MGCRB Applications

Geisinger applied to be designated a Section 401 hospital and was approved effective June 11, 2014. Declaration of Edward A. Chabalowski ("Chabalowski Declaration"), ¶¶ 7 and 8, Exhibits 1 and 2. Geisinger requested to be designated an RRC and was approved effective July 1, 2014. Chabalowski Declaration, ¶¶ 9 and 10, Exhibits 3 and 4.

Geisinger submitted two applications to the MGCRB as allowed by MGCRB rules: a primary application to reclassify to the Allentown CBSA and a secondary application to reclassify to East Stroudsburg CBSA. The primary application signals Geisinger's preferred CBSA for reclassification; the secondary application is the desired CBSA if the primary application is denied. Chabalowski Declaration, ¶ 11, Exhibits 5 and 6. The hospital satisfies the requirements for reclassification to either CBSA based on the general rules applicable to hospitals located in rural areas.

The distance between the hospital and the Allentown CBSA is approximately 27 miles. The distance between the hospital and the East Stroudsburg CBSA is

approximately 15.8 miles. <u>Chabalowski Declaration</u>, ¶ 11, Exhibits 5 and 6. Thus, Geisinger satisfies the proximity requirement set forth at 42 C.F.R. § 412.230(b)(1) for hospitals located in the rural area of a State.

Geisinger's three-year AHW is 86.38% of the Allentown CBSA AHW, and 86.45% of the East Stroudsburg CBSA. <u>Chabalowski Declaration</u>, ¶ 11, Exhibits 5 and 6. Thus, the hospital satisfies the element at 42 C.F.R. § 412.230(d)(1)(iv)(E).

Geisinger's three-year AHW is 96.51% of the AHW of the Scranton-Wilkes-Barre-Hazelton, PA CBSA, where the hospital is physically located, and 101.28% of the AHW of the Pennsylvania rural area, where the hospital is required to be treated as being located pursuant to Section 401. As an RRC, however, the hospital is exempt from this requirement. <u>Chabalowski Declaration</u>, ¶ 11, Exhibits 5 and 6.

Geisinger believes it is entitled to maintain Section 401 status and still reclassify to the Allentown CBSA, the East Stroudsburg CBSA, or any other CBSA for which Geisinger satisfies the reclassification requirements. If the MGCRB treats Geisinger as located in the rural area of the State and an RRC, Geisinger will satisfy all requirements to reclassify to either the Allentown CBSA or the East Stroudsburg CBSA. Pursuant to the Secretary's regulatory scheme, however, the MGCRB will not treat Geisinger as located in a rural area and will deny Geisinger's applications.

Left with no choice but to try to comply with the Secretary's illegal regulatory scheme or lose millions of dollars of reimbursement, Geisinger cancelled its Section

401 status. <u>Chabalowski Declaration</u>, ¶ 15, Exhibit 7. Based on precedent and the rules governing the MGCRB process, because Geisinger cancelled its rural status effective October 1, 2015, the MGCRB should approve Geisinger's <u>secondary</u> application to be reclassified by the MGCRB to the East Stroudsburg CBSA.

Even with cancellation of Section 401 status, the MGCRB will not approve Geisinger's application to reclassify to its <u>primary</u> destination of the Allentown CBSA. The only review of an MGCRB decision is by the CMS Administrator. The CMS Administrator is also bound by the Secretary's regulations, resulting again in Geisinger's application being denied. There is no judicial review from the CMS Administrator's decision. Geisinger estimates that the denial of its application to reclassify to the Allentown CBSA would cost the hospital millions of dollars of Medicare reimbursement every year. <u>Chabalowski Declaration</u>, ¶¶ 12 and 17.

## **ARGUMENT**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.,* 735 F.3d 131, 134 (3d Cir. 2013). Applying the standards here, the Secretary's regulatory scheme, which conflicts with the clear dictates of Section 401 and provides that Section 401 hospitals are ineligible for MGCRB reclassification to a different CBSA, must be held invalid.

## I. **Geisinger is Entitled to Summary Judgment Because the Secretary's Regulatory Scheme is Illegal Pursuant to the Two-Step *Chevron* Analysis.**

Courts use a two-step analysis when considering a challenge to an agency's interpretation of a statute. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ("*Chevron*"). A court first determines whether "Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. A court only moves to Step 2 if the statute "is silent or ambiguous with respect to the specific issue." *Id.* at 843. At Step 2, the court defers to the agency's

construction of a statute unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

An agency's interpretation of a statute is not entitled to deference in Step 1. Deference is called for "only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600, 124 S. Ct. 1236, 157 L. Ed. 2d 1094 (2004). Even in Step 2, courts must not simply "rubber-stamp" agency action:

> the 'deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress.' Accordingly, while reviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act, they must not 'rubber-stamp...administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.'

*Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89, 97, 104 S. Ct. 439, 78 L. Ed. 2d 195 (1983) (citations omitted).

## A. The Secretary's Regulatory Scheme is Illegal under Step 1 of *Chevron.*

A court's first task is to determine whether "Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. Where the language of the statute is clear, a court's inquiry is complete. *In re Phila. Newspapers, LLC,* 599 F.3d 298, 304 (3d Cir. 2010). As the Supreme Court stated in *Chevron*, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a

court, employing traditional rules of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron*, 467 U.S. at 843, n. 9 (citations omitted).

### 1. The Secretary's regulatory scheme is illegal based on the unambiguous language of Section 401.

Section 401 contains Congress's clear and unambiguous direction as to the three specific areas the Secretary must treat a Section 401 hospital as being located in the rural area of the State. The three areas are:

1. Inpatient reimbursement for hospitals (including Geisinger) paid under Subsection (d) of the Medicare Act. Section 401(a);

2. Outpatient reimbursement for such hospitals. Section 401(b)(1), and

3. Determining eligibility for Critical Access Hospital status. Section 401(b)(2).

It is helpful to look closely at each part of Section 401. Section 401(a) adds a new section to the Medicare Act and requiring the Secretary to treat a Section 401 hospital as located in the rural area of the State "For purposes of this subsection." The subsection to which the statute refers is subsection (d) of the Medicare Act. Critical to the issue before this court, subsection (d) includes the rules for paying subsection (d) hospitals, like Geisinger, for inpatient services, including the wage index and the MGCRB reclassification process.

Section 401(b)(1) specifically amends outpatient payment rules for hospitals like Geisinger. Section 401(b)(1) provides in part: "If a hospital is being treated as

being located in a rural area under section 1886(d)(8)(E), that hospital shall be treated under this subsection as being located in that rural area." The wage index is also a critical component of outpatient reimbursement.

Section 401(b)(2) amends a section of the Medicare Act governing eligibility for Critical Access Hospital status. That status is only available to certain hospitals in rural areas. Section 401(b)(2) provides that hospitals can qualify for such status if the hospital "is treated as being located in a rural area pursuant to section 1886(d)(8)(E)," assuming the hospital meets other eligibility criteria.

Thus, by its explicit terms, Section 401 directs the Secretary to apply Section 401 in three specific areas: (1) inpatient reimbursement for subsection (d) hospitals like Geisinger, (2) outpatient reimbursement for such hospitals, and (3) when determining eligibility for Critical Access Hospital status. Those are the only three sections to which Section 401. No more, but certainly no less.

The Supreme Court has said "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62, 122 S. Ct. 941, 956, 151 L. Ed. 2d 908 (2002). When Congress said in Section 401(a) that a qualifying hospital shall be treated as being located in the rural area of the State "for purposes of this subsection," then a reviewing court must conclude that Congress meant "for purposes of this subsection" and everything included in subsection (d).

Subsection (d) includes a wide range of inpatient payment provisions, including DRG payments, payments for hospitals that treat a disproportionate share of low income patients, payments known as outlier payments for cases that utilize an unexpectedly high level of resources, among other provisions. Subsection (d) also includes the requirements for wage index adjustments and the process for hospitals to be reclassified by the MGCRB. 42 U.S.C. § 1395ww(d)(10). Thus, by its very terms, a Section 401 hospital applying to the MGCRB must be treated for purposes of that application as though the hospital were part of the rural area of the State in which the hospital is located. Stated differently, the geographic reclassification criteria that apply to hospitals located in rural areas must be applied to Section 401 hospitals. To conclude otherwise would be to ignore the statutory language and mandate. *See Lawson v. FMR LLC*, 134 S. Ct. 1158, 1166, 188 L. Ed. 2d 158 (2014) ("Absent any textual qualification, we presume the operative language means what it appears to mean."). Such a reading would be "at odds with one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 1566, 173 L. Ed. 2d 443 (2009) (internal citations and quotation marks omitted).

Section 401 states that the Secretary "shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is

located." The Supreme Court has held in any number of contexts that "shall" is "explicitly mandatory" language. *See, e.g., United States v. Monsanto,* 491 U.S. 600, 607, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989) ("Congress could not have chosen stronger words [than 'shall order forfeiture'] to express its intent that forfeiture be mandatory...."); *Hewitt v. Helms*, 459 U.S. 460, 471, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983) ("[The Commonwealth] has used language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed" with regard to placing inmate in administrative segregation.). Thus, if a hospital satisfies the Section 401 criteria (as Geisinger does), the Secretary must, for the three designated purposes set forth in Section 401, treat the hospital as though the hospital is located in the rural area of the state. There is no discretion.

Section 401 is equally clear in terms of what "rural area" means, referring to the definition of "rural area" contained in "paragraph (2)(D)." "Rural area" is defined in paragraph (2)(D) as any area outside an urban area. 42 U.S.C. § 1395ww(d)(2)(D). Section 401, thus, amends the definition of "rural area" contained at 42 U.S.C. § 1395ww(d)(2)(D) to include facilities that qualify under Section 401. Taken together, the mandatory language of Section 401 and reference to the definition of "rural area" require that a Section 401 hospital be treated as though it were a hospital located in a rural area. There is no qualifying language in Section 401 that limits the term "rural area" or restricts a hospital from receiving any benefits to which hospitals

located in rural areas are entitled. Thus, the Secretary's regulations that attempt to impose such a restriction conflict with the explicit language of the statute.

Had Congress intended to grant the Secretary discretion to exclude Section 401 hospitals from being treated as located in a rural area in the MGCRB process or to treat Section 401 hospitals differently than other hospitals located in rural areas, Congress would have included language in Section 401 to that effect. In fact, there are parts of Section 401 in which Congress did grant the Secretary discretion. Section 401(a) provides in part: "For purposes of this subsection, not later than 60 days after the receipt of an application (*in a form and manner determined by the Secretary*) from a subsection (d) hospital…" (emphasis added). Thus, the Secretary has discretion to determine the form and manner of the Section 401 application. Elsewhere in Section 401(a), Congress established four criteria. If a hospital satisfies one of the criteria, the hospital shall be treated as located in the rural area of the State. The last criterion provides: "(IV) The hospital meets such other criteria *as the Secretary may specify.*" (emphasis added). Thus, the Secretary may, but is not required to, establish additional criteria by which a hospital could qualify for Section 401 status. The Secretary has chosen not to enact such additional criteria.

In stark contrast to the language Congress used in Section 401 when it wanted to grant the Secretary discretion, there is no such discretion granted when Congress directed that if a hospital satisfies any one of the Section 401 criteria, then "For

purposes of this subsection" the Secretary "shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located." Had Congress intended there to be discretion, it would have used the language of discretion. Congress would have used words like "but," "except," "as determined by the Secretary," "unless the Secretary determines it is appropriate not to do so," or the like. More simply, Congress could have simply used the word "may" instead of "shall." If Section 401 read "the Secretary <u>may</u> treat the hospital as being located in the rural area," then the Secretary might have discretion to choose when and if to treat a Section 401 hospital as located in the rural area of the State. Congress did not include such language. Rather, Congress used broad and mandatory language, with no qualifications: "the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D) of the State in which the hospital is located." No ifs. No buts. No maybes. No except for the MGCRB process.

**2. The Secretary's regulatory scheme is illegal based on the context of Section 401.**

The context of the statute also establishes that Section 401 applies to the MGCRB process. The Supreme Court has emphasized the importance of context in Step 1 of the *Chevron* analysis:

> In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning— or ambiguity—of certain words or phrases may only become evident when placed in context. It is a fundamental canon of statutory

21

> construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132-33, 120 S. Ct. 1291, 1300-01, 146 L. Ed. 2d 121 (2000) (internal citations and quotation marks omitted)

Although Section 401 does not contain the words "Medicare Geographic Classification Review Board," the statute is not silent on the subject. Section 401 requires that a Section 401 hospital be treated as located in the rural area of a State for all inpatient and outpatient reimbursement purposes, which encompasses the MGCRB reclassification process. Congress did not mention the words "Medicare Geographic Classification Review Board" because it did not need to. The statute contains a much broader command as to the areas to which Section 401 applies.

Section 401 amended the Medicare Act. Congress had an existing statutory scheme and definitions into which Section 401 would be incorporated. When Congress used the language "For purposes of this subsection," the words already had meaning on which Congress could rely. The only plausible reading of the phrase "For purposes of this subsection" is that it means the entire subsection, including the MGCRB process. When Congress has a word or phrase that encompasses all areas to which Congress wants an amendment to apply, it is appropriate for Congress to use the word or phrase. For example, when Congress in Section 401 uses the phrase

"rural area (as defined in paragraph (2)(D))," it is unnecessary for Congress to repeat the entire text of paragraph (2)(D). Similarly, when Congress uses the phrase "For purposes of this subsection," it is unnecessary for Congress to repeat the entire text of subsection (d) and impractical to expect Congress to do so. If language like "For purposes of this subsection" were held to be ambiguous or vague, the only solution for Congress is to repeat entire sections of previously enacted legislation. To do so would be superfluous and would add thousands of pages of to the Medicare Act.

One can easily imagine a statute that changes the Medicare Act, but is rudderless as to what specific sections of the Act the changes apply. For example, in Section 401, if Congress said "for reimbursement purposes" or something similar, without providing context, there might be ambiguity. Under such circumstances, the Secretary might be within her authority to attempt to dissect which aspect of reimbursement Congress meant. That is not the statute or situation before this court.

Section 401 is a model of clarity wherein Congress targeted three specific areas of the Medicare Act. Congress wanted Section 401 hospitals to be treated as located in the rural area for purposes of inpatient reimbursement, including the MGCRB process and all other aspects of subsection (d), so Section 401(a) created a new subparagraph within subsection (d) of the Medicare Act. By using the language "For purposes of this subsection," Congress made clear that it intended the change to apply to the entirety of subsection (d). Congress wanted Section 401 hospitals

23

treated as being located in the rural area for purposes of outpatient reimbursement, so Section 401(b)(1) modified the section of the Act addressing outpatient payments. Finally, Congress wanted Section 401 hospitals to be eligible for Critical Access Hospital status, if the hospitals satisfied all other criteria, so Section 401(b)(2) added a specific phrase to the section of the Act governing Critical Access Hospitals.

Reading Section 401 in context gives further support to Geisinger's position that Congress has clearly spoken on the issues before this Court and the Secretary's regulatory scheme conflicts with Congress's unambiguous intent. In Section 401, itself, Congress told the Secretary and the courts exactly how to apply Section 401. The Secretary has ignored that mandate. The court must not.

### 3. The legislative history of Section 401 shows that the Secretary's regulatory scheme is illegal.

Although a panel of the Third Circuit recently stated that "the current state of Supreme Court and Third Circuit jurisprudence demonstrates that legislative history should not be considered at Chevron step one," *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008), the recent Supreme Court decision in *Lawson v. FMR LLC*, 134 S. Ct. 1158, 188 L. Ed. 2d 158 (2014) shows that legislative history can be considered by courts to ascertain Congressional intent. Four Justices in the majority considered legislative history, even though the majority did not find the statutory language ambiguous. *See Lawson*, 134 S. Ct. at 1169-75 (citing variously to Senate

Report, statements of sponsors, the "legislative record," "legislative history," and congressional staff investigations).

Plaintiff believes the better approach is to consider legislative history at Step 1 of *Chevron* when it is helpful in determining whether Congress has directly spoken to the specific issue in dispute. Even if this Court determines that legislative history is more appropriately considered at *Chevron* Step 2, the Secretary's regulations are directly contrary to the legislative history of Section 401 and illegal.

The intent of Congress in enacting Section 401 is clear from the Conference Report accompanying Section 401. Congress explained that the benefits of an urban hospital qualifying under Section 401 would be very broad:

> Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. **Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area**. **The Board shall regard such hospitals as rural** and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999) (emphasis added).

Congress expressly stated its intention that a Section 401 hospital shall be regarded as being located in the rural area of a State for purposes of reviewing the hospital's MGCRB application. The Conference Report states that the MGCRB "shall regard such hospitals as rural <u>and</u> as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated"

(emphasis added). Under the Secretary's regulations the MGCRB will <u>never</u> treat a Section 401 hospital as located in the rural area of the State. Under the Secretary's regulations, a Section 401 hospital cannot be approved by the MGCRB to reclassify to a different CBSA for wage index purposes while the hospital has Section 401 status. Moreover, even if a hospital cancels its Section 401 status, the MGCRB still will not apply the standards for hospitals located in rural areas of the State:

> For purposes of subpart L of Part 412 of the regulations, the hospital will be considered urban because it is physically located in an urban area and will longer (sic) be in rural status upon the effective date of the MGCRB decision. Thus, the hospital will be subject to reclassification rules that apply to urban hospitals for individual hospital reclassification applications under § 412.230 and countywide group reclassification applications under § 412.234.

*Medicare Program; Changes to the Hosp. Inpatient Prospective Payment Sys. & Fiscal Year 2006 Rates*, 70 FR 47,278, 47444 (Aug. 12, 2005).

There are Section 401 hospitals that, like Geisinger, meet all reclassification requirements applicable to hospitals located in rural areas. In fact, both Moses Taylor Hospital and Regional Hospital of Scranton are located in the same CBSA as Geisinger. Several years ago, the hospitals sought to reclassify to the Allentown CBSA. Defendants refused to consider the hospitals as located in the rural area of the state and denied the hospitals' MGCRB applications, stating that "for purposes of the reclassification rules, and except to the extent any Special Access and wage rules apply as an RRC, the Hospital will be considered urban under an individual

application, as that is where the Hospital is physically located." *In the Case of Moses Taylor Hosp.*, Decision of the Admin. (Apr. 27, 2013) 2013 WL 2470295, *5 (Glazer Declaration, Exhibit 1); *In the Case of Regional Hosp. of Scranton*, Decision of the Admin. (Apr. 27, 2013) 2013 WL 2470296, *5 (Glazer Declaration, Exhibit 2).

The Secretary's reading of Section 401 ignores the use of the word "and" in the Conference Report. The Conference Report explains that the MGCRB shall consider a Section 401 hospital as rural **and** entitled to any applicable exceptions for RRCs or Sole Community Hospitals. Congress intended a Section 401 hospital to be considered located in the rural area of a State for purposes of the hospital's application to the MGCRB. Congress also intended for a Section 401 hospital to be given any exceptions that apply to RRCs in the MGCRB process. As further clarified by the Conference Report, Congress intended both, not one or the other.

**B.  The Secretary's Regulatory Scheme is Illegal under Step 2 of *Chevron*.**

Even if one were to proceed to Step 2 of *Chevron*, the Secretary's regulations would be invalid because they are arbitrary, capricious, or manifestly contrary to Section 401 and the Medicare Act.

Agency discretion is not unbounded. In *Chevron*, the Supreme Court noted that "a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute" should not be disturbed "<u>unless it appears from the statute or its legislative history that the accommodation is not one that Congress</u>

27

would have sanctioned." *Chevron*, 467 U.S. at 845 (emphasis added); *accord Envtl.*

*Def. v. Duke Energy Corp.*, 549 U.S. 561, 575, 127 S. Ct. 1423, 1433, 167 L. Ed. 2d

295 (2007) ("Nothing in the text or the legislative history of the technical

amendments that added the cross-reference to NSPS suggests that Congress had

details of regulatory implementation in mind when it imposed PSD requirements on

modified sources"). The Third Circuit has consistently affirmed the importance of

legislative history in the *Chevron* analysis: "[u]nder step two of the *Chevron*

framework, we consider whether the [agency's] interpretation is reasonable in light

of the language, policies, and legislative history" of the statutory provision at issue.

*GenOn REMA, LLC v. EPA,* 722 F.3d 513, 522 (3d Cir. 2013) (citation omitted);

*United States v. McGee*, 763 F.3d 304, 315 (3d Cir. 2014).

Thus, legislative intent, whether considered at Step 1 or Step 2 of the *Chevron*

analysis, can be critical to determining whether an agency's interpretation of a

statute is valid.

As demonstrated above, the intent of Congress is set forth in the Conference

Report – a Section 401 hospital shall have the right to apply to the MGCRB and be

treated as a hospital located in the rural area of the State would be treated. Such a

hospital is also entitled to receive any exceptions extended to RRCs, if applicable.

This legislative intent shows the Secretary's regulations to be arbitrary, capricious,

and manifestly contrary to Section 401.

The Conference Report shows Congress wanted the MGCRB to regard Section 401 hospitals "as rural." The Secretary does not dispute the language in the Conference Report accompanying Section 401, she simply ignores it.

The Secretary's regulatory scheme attempts to treat hospitals located in the rural area of a State differently, depending on how they came to acquire that status. There is no basis in law for doing so. Under the Medicare Act, there is one definition of "rural" and that is codified at 42 U.S.C. § 1395ww(d)(2)(D). Section 401 hospitals are considered located in the rural area of the State under that singular definition for the three specific purposes set forth in Section 401. The Secretary has created a new category of hospitals that are "kind of located in the rural area of the State", or located in the rural area of the State when the Secretary wants them to be, but not when the Secretary does not want them to be. This creation of a new category of hospitals exceeds the Secretary's authority under Section 401 and the Medicare Act.

By interpreting Section 401 so that a Section 401 hospital is never treated by the MGCRB as being located in the rural area of the State, and ignoring Congress's clear direction that the "Board shall regard such hospitals as rural," the Secretary ceases to implement law and seeks to create her own. In doing so she has acted arbitrary, capriciously, and contrary to statutory requirements.

## CONCLUSION

For the foregoing reasons, Geisinger requests that this Court grant summary judgment in Geisinger's favor and enter an Order in the form that accompanies this motion.


Respectfully submitted,

s/ Joseph D. Glazer                                    s/ Mary Kay Brown
Joseph D. Glazer (NJ No. 042261993)        Mary Kay Brown (PA ID No. 54327)
THE LAW OFFICE OF JOSEPH D. GLAZER, P.C.   Brown Wynn McGarry Nimeroff LLC
116 Village Boulevard, Suite 200              2001 Market Street, Suite 3420
Princeton, New Jersey 08540                    Philadelphia, PA 19103
Telephone:  (609) 951-2262                     Telephone:  (267) 861-5331
Facsimile:  (609) 951-2263                      Facsimile:  (267) 350-9050
jdg@jdglazerlaw.com                             mkbrown@bwmnlaw.com

*Counsel for Plaintiff*
*Geisinger Community Medical Center*


Dated:   October 24, 2014