# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Geisinger Community Medical Center,<br><br>Plaintiff,<br><br>v.<br><br>SYLVIA MATHEWS BURWELL, Secretary, Department of Health and Human Services; MARILYN TAVENNER, Administrator, Centers for Medicare and Medicaid Services; and ROBERT G. EATON, Chairman, Medicare Geographic Classification Review Board,<br><br>Defendants. | Civil Action No. 3:14-cv-01763-MEM |

## LOCAL RULE 56(a)1 STATEMENT OF FACTS

Pursuant to Local Rule of Civil Procedure 56(a)1, Plaintiff Geisinger Community Medical Center ("Geisinger"), respectfully submits this statement of material facts as to which there is no genuine issue to be tried.

1.  Geisinger, Medicare Provider Number 39-0001, is a not-for-profit, general, acute care hospital located at 1800 Mulberry Street, Scranton, Pennsylvania. Edward A Chabalowski ("Chabalowski Declaration"), ¶ 2.

2.  Geisinger is a provider of services as defined in the Medicare Act, 42 U.S.C. § 1395x(u), and has entered into an agreement with the Secretary to provide

1

services to Medicare beneficiaries pursuant to 42 U.S.C. § 1395cc. Geisinger is a subsection (d) hospital under the Medicare Act and receives reimbursement for services rendered to Medicare beneficiaries. Chabalowski Declaration at ¶ 3.

### A. The Medicare Program

3. Unless exempt, hospitals participating in Medicare, such as plaintiff, are paid under Medicare's inpatient prospective payment system ("IPPS"), as provided for in 42 U.S.C. § 1395ww(d).

4. Calculating IPPS rates begins with a standard nationwide rate based on average operating costs of inpatient hospital services. 42 U.S.C. § 1395ww(d)(2).

5. CMS determines the proportion of the standardized amount attributable to wages and wage-related costs, and multiplies that proportion by a "wage index" that reflects the relation between the local average of hospital wages and the national average. *See* 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E).

6. Another variable reflects the disparate hospital resources required to treat illnesses. Medicare inpatients are classified into groups based on diagnosis. Each "diagnosis-related groups" (DRGs) is assigned a "weight" representing the relationship between the cost of treating patients within that group and the average cost of treating all Medicare patients. *See* 42 U.S.C. § 1395ww(d)(4).

7. A comparable system, commonly known as the Hospital Outpatient Prospective Payment System (OPPS), exists for Medicare outpatient payments to

hospitals. Payment amounts for each outpatient Ambulatory Payment Classification (APC) are based on CMS's estimates of the costs associated with providing services assigned to an APC. Payments for procedures are adjusted for geographic wage variations: 60% of the APC amount is multiplied by the wage index and added to the remaining 40% of the APC amount. *See* 42 U.S.C. § 1395*l*(t).

### B. The Medicare Wage Index Adjustment

8. In 42 U.S.C. § 1395ww(d)(3)(E), Congress required an adjustment to the federal reimbursement rate to account for differences in labor costs based on geographic location and the market in which the hospitals compete for labor:

> [t]he Secretary shall adjust the proportion … of hospitals' costs which are attributable to wages and wage-related costs … for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.

9. The wage index adjustment is recomputed annually to reflect changes in local labor costs compared to the national average. Hospitals in areas with labor costs above the national average receive a higher reimbursement rate, while hospitals in areas with lower labor costs receive a lower rate. 42 U.S.C. § 1395ww(d)(3)(E).

10. In 1983, the Secretary established hospital labor markets by grouping hospitals according to Metropolitan Statistical Areas ("MSAs"). Hospitals in the county or counties that make up an MSA are grouped together and treated as a single

labor market for wage index purposes. *See Medicare Program; Prospective Payments for Medicare Inpatient Hosp. Servs.*, 48 FR 39,752, 39766 (Sept. 1, 1983).

11. Following the 2000 census, CMS adopted Core Based Statistical Areas (CBSAs) to replace MSAs. *See Medicare Program; Changes to the Hosp. Inpatient Prospective Payment Sys. & Fiscal Year 2005 Rates*, 69 FR 48,916, 49049 (Aug. 11, 2004).

12. The Secretary determines a separate wage index for each CBSA, and one wage index per state for rural areas. Whether a hospital is considered located in an urban area or rural area can significantly impact a hospital's Medicare reimbursement. A hospital's wage index is the wage index the Secretary assigns to the area where the hospital is physically located. *See* 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E).

13. According to a 2007 report, more than one-third of hospitals paid under the IPPS system receive a modified wage index enabled by adjustments provided by Congress. *MedPAC: Report to the Congress: Promoting Greater Efficiency in Medicare* (June 2007) at 129, www.medpac.gov/documents/jun07_entirereport.pdf.

**C. The MGCRB Geographic Reclassification Process**

14. In 1989 Congress established the Medicare Geographic Classification Review Board (MGCRB) to provide a mechanism for a hospital to request to be reclassified from the geographic area in which it is physically located to another

proximate area for purposes of Medicare reimbursement. 42 U.S.C. § 1395ww(d)(10).

15. The MGCRB is an administrative body within the United States Department of Health and Human Services and renders decisions on applications by hospitals to be reclassified to different geographic areas for purposes of computing portions of their Medicare payments for inpatient services for a particular fiscal year. 42 U.S.C. § 1395ww(d)(10)(A)-(C).

16. Generally, a hospital applying to the MGCRB for geographic reclassification as an individual hospital must prove three things. *See* 42 C.F.R. § 412.230.

17. First, the hospital's three-year average hourly wage ("AHW") must be at least 108% of the AHW of the area in which the hospital is located if the hospital is located in an urban area or 106% if the hospital is located in a rural area. 42 C.F.R. § 412.230(d)(1)(iii)(C).

18. Second, the hospital's three-year AHW must be at least 84% of the AHW of the area to which the hospital is applying if the hospital is located in an urban area or 82% if the hospital is located in a rural area. 42 C.F.R. § 412.230(d)(1)(iv)(E).

19. Third, the hospital must be within 35 miles of the area to which it is applying if the hospital is located in a rural area, or within 15 miles if the hospital is located in an urban area. 42 C.F.R. § 412.230(b)(1).

20. Medicare recognizes hospitals with "special" status, including rural referral centers (RRCs). An RRC need not demonstrate close proximity to the area to which it seeks reclassification. 42 C.F.R. § 412.230(a)(3). Any hospital that was ever an RRC is exempt from the 108% requirement of 42 C.F.R. § 412.230(d)(1)(iii) and need only meet the 82% requirement of 42 C.F.R. § 412.230(d)(1)(iv).

21. Reclassifications by the MGCRB are valid for three years, after which a hospital must reapply to the MGCRB if the hospital wishes to be reclassified to a different CBSA for a subsequent time period. 42 U.S.C. § 1395ww(d)(10)(D)(v).

### D. Section 401

22. In 1999, Congress enacted Section 401 of the *Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999* ("Section 401"). Pub. L. No. 106-113, H.R. 3194, 106th Cong. § 401 (1st Sess. 1999) (codified at 42 U.S.C. § 1395ww(d)(8)(E)). Section 401 amended section 1886(d)(8) of the Medicare Act and created a mechanism by which some hospitals located in urban areas could be treated as being located in a rural area for purposes of Medicare reimbursement.

23. Under Section 401, a hospital located in an urban area may qualify to be treated as if it were located in a rural area for purposes of Medicare reimbursement

if it meets one of several specified criteria. One such criterion provides that a hospital qualifies for reclassification under Section 401 if it "would qualify as a rural, regional, or national referral center under ... [1886(d)(5)(C)] … if the hospital were located in a rural area." *Id.*

24.     A hospital qualifies as an RRC if it meets all of the following criteria: (1) the hospital's case-mix index is at least equal to the national or regional average, (2) the hospital has at least 5000 discharges, and (3) at least 50% of the hospital's medical staff is board certified. 42 C.F.R. § 412.96.

25.     The conference report accompanying Section 401 provides in part as follows:

> Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area. The Board shall regard such hospitals as rural and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999).

26.     The Secretary adopted regulations providing that "[a]n urban hospital that has been granted redesignation as rural under §412.103 [the regulation implementing Section 401] cannot receive an additional reclassification by the

7

MGCRB based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. § 230(a)(5)(iii).

### E. Facts Specific to Geisinger

27. By application dated May 28, 2014, and received by the Centers for Medicare and Medicaid Services ("CMS") on June 11, 2014, Geisinger applied to be designated a Section 401 hospital and thus to be treated as being located in the rural area of Pennsylvania for the purposes set forth in Section 401. Chabalowski Declaration at ¶ 8 and Exhibit 1.

28. By letter dated August 12, 2014, CMS notified Geisinger that Geisinger's application to be designated a Section 401 hospital had been approved effective June 11, 2014. Chabalowski Declaration at ¶ 9 and Exhibit 2.

29. By letter dated June 11, 2014, and received by CMS and the Medicare Administrative Contractor on June 13, 2014, Geisinger requested to be designated a Rural Referral Center ("RRC") . Chabalowski Declaration at ¶ 10 and Exhibit 3.

30. By letter dated August 20, 2014, Novitas Solutions, the Medicare Administrative Contractor, notified Geisinger that Geisinger's request for RRC status had been approved effective July 1, 2014. Chabalowski Declaration at ¶ 11 and Exhibit 4.

31. Geisinger submitted two applications to the Medicare Geographic Classification Review Board ("MGCRB") as allowed by MGCRB rules: a primary

application to be reclassified to the Allentown-Bethlehem-Easton, PA-NJ CBSA (CBSA Number 10900) and a secondary application to be reclassified to East Stroudsburg PA CBSA (CBSA Number 20700). The primary application signals Geisinger's preferred CBSA for reclassification and the secondary application is the desired CBSA for reclassification if the primary application is not approved. Chabalowski Declaration at ¶ 12 and Exhibits 5 and 6.

32. Geisinger estimates that it would receive approximately $2.6 million a year in additional reimbursement if reclassified by the MGCRB to the primary destination of the Allentown-Bethlehem-Easton, PA-NJ CBSA, but only $1.6 million a year if Geisinger is reclassified to its secondary destination of the East Stroudsburg PA CBSA. Chabalowski Declaration at ¶ 13.

33. If Geisinger continued its Section 401 status, the MGCRB, in compliance with the Secretary's regulatory scheme, would deny Geisinger's MGCRB applications. Chabalowski Declaration at ¶ 15.

34. Geisinger cancelled its Section 401 status effective October 1, 2015. Chabalowski Declaration at ¶ 16 and Exhibit 7.

35. Based on precedent and the rules governing the MGCRB reclassification process, because Geisinger cancelled its Section 401 status effective October 1, 2015, the MGCRB should approve Geisinger's secondary application to

be reclassified by the MGCRB to the East Stroudsburg PA CBSA. Chabalowski Declaration at ¶ 16.

36. Even with the cancellation of Section 401 status, the MGCRB will not approve Geisinger's application to reclassify to its primary destination of the Allentown-Bethlehem-Easton, PA-NJ CBSA. Chabalowski Declaration at ¶ 17.

37. If the MGCRB treats Geisinger as located in the rural area of the State and an RRC, Geisinger will satisfy all requirements to reclassify to either the Allentown CBSA or the East Stroudsburg CBSA. Chabalowski Declaration at ¶ 20.

38. The distance between the hospital and the Allentown CBSA is approximately 27 miles. The distance between the hospital and the East Stroudsburg CBSA is approximately 15.8 miles. Chabalowski Declaration, ¶¶ 18 and 19, Exhibits 5 and 6. Thus, Geisinger satisfies the proximity requirement set forth at 42 C.F.R. § 412.230(b)(1) for hospitals located in the rural area of a State.

39. Geisinger's three-year AHW is 86.38% of the Allentown CBSA AHW, and 86.45% of the East Stroudsburg CBSA. Chabalowski Declaration, Exhibits 5 and 6. Thus, the hospital satisfies the element at 42 C.F.R. § 412.230(d)(1)(iv)(E).

40. Geisinger's three-year AHW is 96.51% of the AHW of the Scranton-Wilkes-Barre-Hazelton, PA CBSA, where the hospital is physically located, and 101.28% of the AHW of the Pennsylvania rural area, where the hospital is required

to be treated as being located pursuant to Section 401. <u>Chabalowski Declaration</u>, Exhibits 5 and 6. As an RRC, however, the hospital is exempt from this requirement.

41. Pursuant to the Secretary's regulatory scheme, the MGCRB will not treat Geisinger as located in a rural area.

42. Because there is no judicial review from an adverse decision by the MGCRB, absent this Court's intervention now, Geisinger will have no avenue to have a court review the Secretary's regulatory scheme or overturn the MGCRB's denial of the hospital's application.

43. The parties have stipulated and agreed that the MGCRB will not issue any decision before January 1, 2015 regarding Geisinger's pending MGCRB applications.

Respectfully submitted,

s/ Joseph D. Glazer
Joseph D. Glazer (NJ No. 042261993)
THE LAW OFFICE OF JOSEPH D. GLAZER, P.C.
116 Village Boulevard, Suite 200
Princeton, New Jersey 08540
Telephone: (609) 951-2262
Facsimile: (609) 951-2263
jdg@jdglazerlaw.com

s/ Mary Kay Brown
Mary Kay Brown (PA ID No. 54327)
Brown Wynn McGarry Nimeroff LLC
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (267) 861-5331
Facsimile: (267) 350-9050
mkbrown@bwmnlaw.com

*Counsel for Plaintiff*
*Geisinger Community Medical Center*

Dated: October 24, 2014